## Richmond.

### EASLEY AND AL. v. BARKSDALE AND ALS.

February 10.

1. There is a creditor's bill against the administrator and heirs of an intestate to subject his estate to the payment of his debts. Pending the suit one of the heirs sells and conveys the land received from the estate to a *bona fide* purchaser for value, having no actual notice of the pendency of the suit. HELD : That no *lis pendens* having been docketed, the land is not liable to satisfy the grantor's proportion of the intestate's debts.

2. The acts (Code of 1873, ch. 182, § 5, and ch. 127, § 5) in relation to the liability of real estate in the hands of the heirs, for the debts of the ancestor, and the necessity and effect of a *lis pendens*, must be construed together ; and they require a *lis pendens* to be docketed to affect a purchaser without actual notice of the pending suit.

3. The notice which, under the statute, will affect such a purchaser is actual notice ; constructive notice is not sufficient.

4. If a report of the accounts of a personal representative and of the debts and demands against the decedent's estate has been filed in the office of the court wherein the order conferring his authority was made, as required by the statute (Code of 1873, ch. 128), a subsequent purchaser may reasonably be required to take notice of it.

5. Lands sold and conveyed by an heir or devisee after such report filed will be held liable in the hands of a purchaser for the debts of the decedent ; while lands sold and conveyed to a *pendente lite* purchaser without actual notice of the *lis pendens*, will not be bound by such *lis pendens* unless the provisions of statute, ch. 182, are complied with.

6. There is a creditor's suit pending against the administrator and heirs of A to subject his real estate to the payment of his debts. In the same court there is a suit pending by another party to subject the lands of W, a son of A, to the payment of the debts of W, and in this suit there is a sale under a decree, of the lands of W which he had inherited from A, and J, another son of A, is the purchaser. Upon a bill by J so much of the purchase money as was necessary to pay W's portion of A's debts will be applied to that purpose.

William Allen, of the county of Halifax, died in 1862, intestate, leaving a widow and eight children, and leaving a considerable estate in lands and slaves. Under an order made in December, 1862, commissioners appointed by the court divided the land and slaves, setting apart a certain portion of the land and certain slaves to the widow as her dower, and dividing the other two-thirds among the children, assigning to each a specific part of the land. Of these children one was William C. Allen, another was George J. Allen, and another was Eleanor C. Allen, who afterwards married Robert F. Howard.

In September, 1869, Joel A. Hawkins and Mary A., his wife, instituted a suit as a creditors bill, in the circuit court of Halifax county, against the administrator *de bonis non* of William Allen, and his eight children, in which they claimed to be creditors of William Allen, by a judgment recovered against the administrator in May, 1868, and they sought to subject the land of said Allen in the possession of his children.

The bill does not seem to have been answered by any of the defendants; and indeed it seems to be doubtful whether any other than the mere heading of the bill containing the names of the parties was filed for some years; but in 1871 a decree was made directing a commissioner to settle the administrator's account of his administration, and also take an account of the debts of William Allen, with their priorities, and to report upon the real estate left by him.

There were several reports by the commissioner showing the debts of William Allen, which, according to the last report made February 25th, 1876, after exhausting the personal estate, amounted to $3,992.41; and that the portion to be paid by each of the eight children was $499.05.

The cause came on to be heard on the 11th day of March, 1876, when a decree was made in favor of the creditors against seven of the children of William Allen for their

share of the debts due.  And on their failure to pay the amount decreed against them respectively, commissioners were appointed to sell the land, &c.  And it appearing that the other child, Eleanor C., had with her husband sold and conveyed the land assigned to her to Marshall R. Womack, and had died insolvent, the court directed that he should be made a party to the suit.

Womack was accordingly made a party defendant, and answered, and also gave his deposition in the case.  He averred that he had purchased and paid for the land and received a conveyance therefor, without any notice of the pendency of the suit, or that Wm. Allen owed any debts. He insisted therefore that he was a *bona fide* purchaser for value, without notice, and that his land was not liable to satisfy the debts of Wm. Allen.  The deed to Womack bears date 13th of December, 1871.

The cause came on again to be heard on the 10th of March, 1877, when the court held that Womack was a purchaser for value without notice, and set aside the order directing him to be made a party.

At the same time that the suit of Hawkins and wife against William Allen's adm'r and heirs was instituted, Elisha Barksdale, Jr., brought his suit in equity in the same court, against Wm. C. Allen, the son of Wm. Allen, to subject his real estate to satisfy a judgment which the said Barksdale had recovered against said Wm. C. Allen. In this case there was an order for an account of the judgment liens against the estate of the defendant, and their priorities, and of his real estate.  There were several reports showing the debts of William C. Allen, and the real estate was valued at $2,132; and of this, all but $200, was the valuation of the land received from William Allen's estate.

The cause came on to be heard on the 6th of April, 1872, when the court made a decree for the sale of the land on

the terms of, cash for $100, and for the balance on a credit of one, two and three years, &c. This sale was in June, 1875, and made George J. Allen become the purchaser, and complied with the terms of sale. And in October, 1875, the sale was confirmed, and a commissioner named was authorized to withdraw the lands of the purchaser and collect them as they fell due.

In February, 1877, George J. Allen filed his bill in the same court, in which, after setting out the sale and purchase of the land of Wm. C. Allen, as hereinbefore stated, he set out the decree in the case of Hawkins and wife against Wm. C. Allen, and for the sale of the lands, if the money was not paid; he says that a judgment had been rendered against him in one of his bonds, which he had refused to pay on the ground that the land he had purchased was liable to the said Wm. C. Allen's share of the debts of William Allen; that said case was still pending in court, and making E. Barksdale, Jr., Hawkins and wife, and others, defendants, he prays for an injunction to the judgment, &c.; that this case may be heard with the others, and that the court will determine whether the said land is liable to the payment of William C. Allen's just proportion of the debts of William Allen, deceased; and if so, that the sale of said land may not be disturbed, but so much of the proceeds of said sale may be appropriated for the payment of William C. Allen's just proportion of said debts of his father. The injunction was granted.

Barksdale demurred to the bill, and also answered. He admits there was a decree for a sale of the lands of William Allen in the case of Hawkins and wife v. Allen's adm'r and als., but says there had been no sale. He insists that George J. Allen, the plaintiff, was a party in that suit, and knew all about the title of William C. Allen at the time he purchased the land; and as respondent believes and charges he was also aware of the condition of his father's estate at

the time of the purchase aforesaid. That the commissioner did not warrant the title; he sold just such interest as William C. Allen had. That the plaintiff bought with full knowledge of the title, and that the sale was reported to the court and was confirmed without an objection or exception on the part of the complainant.

In March, 1877, James S. Easley presented his petition, in which he stated he was the assignee of the debt of Hawkins and wife, set up in their suit against Allen's adm'r and heirs. He set out the decree against William C. Allen; that the moneys so decreed had not been paid by said Allen; and the suit of E. Barksdale, Jr., against said William C. Allen; and he insisted that the moneys decreed against William C. Allen should be paid out of the proceeds of the land inherited from his father in preference of the proper debts of the said William C. Allen; and that the court still having said proceeds under its control will appropriate so much thereof as may be necessary for that purpose. He prayed that he might be allowed to file his petition in the case of Barksdale v. Allen; that an account might be taken of all debts of William Allen, deceased, which may remain unpaid, and the share or proportion thereof to be borne by William C. Allen ascertained; and so much of the proceeds of the land inherited by him from his father be appropriated for the purpose, including that decreed to Hawkins and wife and assigned to him.

On the 10th of March, 1877, the three causes of Hawkins and wife v. Allen's adm'r and als., E. Barksdale, Jr., v. Wm. C. Allen, and George J. Allen v. Barksdale, came on to be heard, on the motion of Easley for leave to file his petition in the second of said causes; and on the motion of said Easley and George J. Allen to have the three causes heard together. On consideration whereof, the court refused to allow Easley to file his petition in the second of said causes, and dismissed the motion to hear the three causes

together, and decreed that the injunction granted to George J. Allen be dissolved, and his bill dismissed with costs. And Easley and George J. Allen united in a petition for an appeal from the decree made in the first cause dismissing the bill as to Womack, and also from the last decree ; which was awarded.

*J. W. Riley* and *Ould & Carrington*, for the appellants.

*E. Barksdale, Jr.*, *J. A. Meredith*, and *W. W. Henry*, for the appellees.

BURKS, J., delivered the opinion of the court.

William Allen died in 1862 intestate, and in the latter part of that year the land and slaves of which he was seized and possessed at his death were divided amongst his heirs and distributees, eight in number, debts of the decedent remaining unpaid. In 1869 a bill was brought by Hawkins in behalf of himself and other creditors of the decedent against the heirs and distributees and the second administrator of the estate, to have these debts paid out of the real and personal assets.

The first question to be decided is, whether the land purchased by M. R. Womack from one of the heirs, is liable in his hands for a ratable share of the debts. It was certainly liable under the statute (Code of 1873, ch.· 127, § 3) before alienation by the heir; but Womack claims protection as a *bona fide* purchaser. It is not denied that he is a purchaser for value. He paid full consideration and acquired the legal title by regular conveyance. So that he is a complete purchaser; but it is shown that he is a purchaser *lite pendente*. He bought after the creditors had commenced their suit and while that suit was pending, to which the heir from whom he purchased was a party ; and according

to the doctrine of *lis pendens*, as it prevails both at law and in equity, unless controlled by some statute, the land conveyed to him was bound in his hands by any decree rendered against the heir in that suit touching that land. This is settled law. *Newman* v. *Chapman*, 2 Rand. 93; S. C. 14 American Decisions, 766, and cases cited; 2 Rob. Prac. 282, *et seq.* His reliance for protection, therefore, is on the statute, Code of 1873, ch. 182, § 5, which provides that "no *lis pendens* or attachment against the estate of a non-resident shall bind or affect a purchaser of real estate, without actual notice thereof, unless and until a memorandum" (which is described) "shall be left with the clerk of the county or corporation in which the land is situate, who shall forthwith record the memorandum in the deed book, and index the same," as the act directs.

It is not pretended, that there was in this suit any such memorandum made and recorded, or left with the clerk to be recorded, and the statute, apart from any other enactment, would seem to cover the case. But it is insisted by the learned counsel of the appellants, that the case is taken out of the operation of the section, which has been cited, by the fifth section of chapter 127.

In this view we do not concur. Section 3 of that chapter makes all of the decedent's real estate, not made by himself liable for his debts, assets for the payment of such debts.

Section 4 declares that "such assets, so far as they may be in the hands of the personal representative of the decedent, may be administered by the court in the office whereof there is or may be filed under the one hundred and twenty-eighth chapter, a report of the accounts of such representative, and of the debts and demands against the decedent's estate; or they may, in any case, be administered by a court of equity."

Section 5 is in these words: "Any heir or devisee who shall sell and convey any real estate, which by this chap-

ter is made assets, shall be liable to those entitled to be
paid out of the said assets, for the value thereof, with in-
terest; in such case, the estate conveyed shall not be liable
if the conveyance was *bona fide,* and at the time of such con-
veyance no suit shall have been commenced for the admin-
istration of the said assets, nor any reports have been filed
as aforesaid of the debts and demands of those entitled."

The object and effect of this section are two-fold : first, to
protect the creditor or other person entitled to be paid out
of the real estate declared to be assets, by making the heir
or devisee personally liable for the value, with interest, of
such estate when sold and conveyed by him ; second, to
protect a *bona fide* purchaser of such estate under a convey-
ance made before the commencement of a suit for the ad-
ministration of the assets, or the filing of any such report
as is described.

It does not extend in terms to a purchaser under a con-
veyance made *after* the commencement of the suit, and it
might seem to be implied, that the estate in the hands of
such a purchaser would be liable ; but the section must be
considered in connection with the fifth section of chapter
182, already cited. The two sections are to a certain extent
*in pari materia,* and must be construed together as parts of
one code of laws adopted (in 1849) by the same legislature;
and full effect must be given, if practicable, to each sec-
tion. This principle requires that section 5 of chapter 182
shall be interpreted as embracing, in its meaning and ope-
ration, the suit described in section 5 of chapter 127. Such
a suit in progress is certainly a *lis pendens,* and the evils
attending a purchase of the subject *lite pendente* are fully
within the mischief intended to be remedied by the broad
and comprehensive section first named.

The suit may be brought in any county or corporation
wherein any of the defendants may reside, or the land
sought to be subjected, or any part of it, may be. (Code of

1873, ch. 165). The defendants may reside, some in one county or corporation and some in another, and so the lands may be situated partly in one county or corporation and partly in another, or wholly in different counties or corporations ; and thus a person, desiring to purchase of an heir or devisee and to protect himself against the consequences of a lis pendens, would not have the means of doing so, conveniently and safely, unless there was some such record of it as the statute provides. But if a report of the accounts of a personal representative and of the debts and demands against the decedent's estate has been filed in the proper office, as authorized by the statute, a subsequent purchaser might reasonably be required to take notice of it; for the report is required to be filed by the representative in the office of the court wherein the order conferring his authority was made. (Code of 1873, ch. 128). So that the purchaser has but to ascertain by inquiry, as he can easily do, the name of the representative and the court in which he qualified, and then look in the office of that court and see whether any such report, as is authorized, has been filed. Hence, it may very well be, and so we think it was intended by the legislature, that lands sold and conveyed by an heir or devisee, after report filed, shall be liable in the hands of the purchaser for the debts of the decedent, while lands sold and conveyed lite pendente to a purchaser, without actual notice of the lis pendens, shall not be bound by such lis pendens, unless the provisions of section 5 of chapter 182 are complied with.

But it is further contended by the counsel of the appellants, that although there was no such memorandum recorded, or left with the clerk to be recorded, as is provided, yet Womack had notice of the lis pendens at the date of his purchase.

It appears, that when Womack was negotiating for the land, he requested H. H. Hurt to examine and ascertain

whether there were against Howard and wife, the proposed vendors, any judgments which were liens on the land. The examination was made, and the result—that there were no such liens—was reported by Hurt to Womack. No inquiry was directed as to the debts of William Allen, and nothing reported about them. It is distinctly shown by Womack's deposition that he had no personal knowledge of the pending suit of William Allen's creditors, nor of any outstanding debts against his estate. But Hurt, who was Womack's agent in the examination made, was or had been sheriff of Halifax county, was the administrator of William Allen and a party to the pending creditors' suit. He, of course, had notice of that suit and its pendency, though, it seems, he did not communicate that fact to Womack. Nevertheless, it is insisted that Womack had notice on the ground that notice to an agent is notice to his principal. But the answer is, that the notice which, under the statute, affects a purchaser is "actual notice."

Notice is said to be *actual* when it is directly and personally given to the party to be notified; and constructive, when the party is put upon inquiry, and must be presumed to have had notice, or by judgment of law is held to have had notice. *Jordan* v. *Pollock*, 14 Ga. R. 145.

Notice to the agent of a fact which he does not communicate to his principal, when regarded in law as notice to the latter, is not as to him actual, but constructive notice. As to this proposition the authorities seem to agree. "Notice to my *agent* or counsel is *constructive* notice to me," says Tucker, P., in *French* v. *Loyal Company*, 5 Leigh, 678. On proof of notice to an agent, the *law* at once *imputes* notice to the principal; not because notice to the agent is not proof that the principal *actually* had notice also, but because it is a fact of such a character that the principal ought to be as much bound by it *as if he had notice*. Cabell, J., in same case, p. 658. 2 Minor's Inst. 889; *Leneve* v. *Leneve*, and notes,

2 Lead. Cas. Eq., Pt. 1 (4th Am. Ed.), 107, *et seq;* *Morrison* v. *Bausemer & Co. and others,* 32 Gratt. 225; *The Distilled Spirits,*. 11 Wall. U. S. R. 356.

In the view we have taken, the circuit court did not err in dismissing the creditors' bill of Hawkins and others as to the defendant Womack. It is unnecessary, therefore,. to consider the objection raised by Womack's counsel, founded on alleged irregularities in the proceedings in the court below, or the further objection that the description of the real estate in the bill was not sufficient to affect the title acquired pending the suit.

The next question is, whether the proceeds of the land (161 acres) sold to the appellant George J. Allen should be applied to the debts of William Allen or to the individual debts of William C. Allen. This was land which descended from the former to the latter as heir, and was unquestionably liable as assets for the ancestor's debts. Contemporaneously with the suit by the creditors of William Allen to subject the assets of the decedent in the hands of the heirs and administrator, Barksdale filed his bill against William C. Allen to subject his real estate, consisting chiefly of the land aforesaid descended from his father, to the satisfaction of a judgment of the complainant against the said William C. Allen. An account of the real estate and the liens thereon was ordered and taken, and on the 6th day of April, 1872, a decree was rendered for the sale of said real estate. The sale was made on the 25th day of June, 1875, George J. Allen, also one of the heirs of William Allen, becoming the purchaser of the land, and was reported and confirmed October 2, 1875, and a commissioner appointed, to collect the purchase money as it matured. When the first instalment became due, default in payment being made, the commissioner brought an action at law for the amount, recovered judgment and sued out execution upon it; whereupon George J. Allen, the purchaser, on bill

filed, obtained an injunction to restrain the proceedings on the judgment, upon the ground that the land (the tract of 161 acres) which had been purchased by him was chargeable with William C. Allen's proportion of William Allen's debts, for the payment of which a decree had been obtained in the pending creditors' suit against the heirs of the said William Allen; and the prayer of the bill was, not to set aside the sale of the land, but to apply the proceeds, as far as necessary, to the payment of William Allen's debts.

It appears by the record that when the decree for sale was rendered in the Barksdale suit the account of the debts of William Allen, ordered in the suit against his administrator and heirs, had not been taken, and the decree in that suit for the sale of the lands of the heirs, including the 161 acres inherited by William C. Allen, was not made until about five months after the decree in the other suit confirming the sale to George J. Allen.

A short time after the injunction was obtained by the latter, the appellant Easley filed his petition in the causes, claiming that he had become the owner of the Hawkins' debt (the largest against the estate of William Allen), setting out the proceedings, as far as necessary, and praying that the proceeds of the land sold to George J. Allen be applied to his debt and the other debts of William Allen in preference to the individual debts of William C. Allen. The several causes were heard together, and the circuit court rejected the petition of Easley, dissolved the injunction which had been awarded George J. Allen and dismissed his bill; thus deciding in effect that the creditors of William C. Allen had the preferable right to the proceeds of the land sold to George J. Allen.

We are of opinion that this decree is erroneous.

It is not disputed that the claim of the creditors of William Allen against the land inherited by William C. Allen is prior and paramount to that of the individual creditors

of the latter, and it is the plainest equity imaginable that the proceeds unindisposed of should stand in the place of the land.

It was argued by the counsel of the appellee Barksdale, that the purchaser, George J. Allen, is precluded from making objection to the sale after confirmation, upon the principle enunciated in *Young's Adm'r and Bowyer* v. *McClung and others*, 9 Gratt. 336; *Long and others* v. *Weller's Ex'or and others*, 29 Gratt. 347, and other cases decided by this court. But the application in the present case was not to set aside or disturb the sale, but to control and direct the disposition of the proceeds; and under the circumstances, which have been narrated, it cannot for a moment be doubted that equity demands that these proceeds shall go, as far as need be, to the creditors, whose debts constitute the first charge upon the land. In some of its features, the case is analogous to *Williams* v. *Williams and others*, 11 Gratt. 95. A creditor qualified as administrator of his deceased debtor and exhausted the personal estate of the decedent in the payment of his debts, leaving himself still a creditor. The heirs of the decedent filed a bill for the sale of his real estate, the administrator, it would seem, not being a party to the suit. The land was sold under decree of the court on a credit and a part of it was *bought by the administrator, who gave his bond for the purchase money*. The administrator then filed his bill to enjoin the payment of the purchase money to the heirs, claiming that he was entitled to have it applied in satisfaction of his debt; and it was decided by this court that he was entitled to the relief prayed for.

It appears that in the division of the slaves of William Allen, George J. Allen received his share as distributee at the estimated value of $2,450, or thereabouts; and it was argued that he should account personally for so much of that sum as might be necessary to exonerate the land he bought from the charge of William Allen's creditors, and

thus leave it to the individual creditors of William C. Allen. The plain and conclusive answer to this argument is, that there is no principle of law or equity which requires George J. Allen to contribute to relieve William C. Allen's land for the benefit of his creditors. George J. Allen is bound to the extent of the value of the property, real and personal, received by him as heir and distributee, to pay his proportion of William Allen's debts, but he certainly cannot be bound to pay William C. Allen's proportion, for the purpose of exonerating the land received by the latter and turning it over to his creditors. On the contrary, if he was compelled to pay what William C. Allen ought to pay, he would be entitled for his indemnity to stand in the shoes of William Allen's creditors as against the land inherited by William C. Allen, which is charged in law with the payment of William Allen's debts; and this right of substitution would be paramount to the right of William C. Allen's creditors to subject the land for his debts.

Whether, when the representative has wasted or misapplied the personal assets of the decedent, a creditor or other person entitled to be paid out of the assets, real as well as personal, can, as the law now stands, go against the real estate in the hands of the heirs or devisees before exhausting his remedies against such representative and the sureties on his bond as fiduciary, is a question very important in the practice, but need not now be decided, as it does not arise in the case before us.

It was further argued by Mr. Barksdale's counsel, that the reversionary interest of William C. Allen in the land held as dower by William Allen's widow should be sold to satisfy William C. Allen's proportion of William Allen's debts before the land purchased by George J. Allen or the proceeds of sale are subjected for said debts. But this is not the case of two funds, one of which is doubly and the other singly charged, where the principle of marshalling is applied.

In the case under judgment both classes of creditors have the right to resort to both parcels of property, one class, however, being entitled to priority in respect of the other. If there could be any cause for subjecting one parcel rather than the other, it would seem reasonable that the sale of the reversionary interest should be postponed, because, from the nature of the estate, it is more liable to sacrifice by sale.

The objection that the appeal is joint cannot prevail. If we were of opinion, as we are not, that there should have been separate appeals, the petition, though joint in form, might be treated here as several as to each of the appellants, and the matter of costs be regulated in the decree to be entered.

The decree of the circuit court dismissing the bill of the complainants in the suit of Hawkins against Allen's administrator and others as to the defendant Womack, will be affirmed, and the other decree complained of will be reversed, and the cause remanded for further proceedings, to be had in conformity with this opinion. As the land assigned to Eleanor C. Allen, and afterwards sold and conveyed by her and her husband to Womack, is not liable to the claims of William Allen's creditors, an additional burden is thereby imposed on the lands of the other heirs, which burden should be apportioned by the circuit court according to the principles laid down *Lewis and others* v. *Overby's Adm'r and others,* 31 Gratt. 601.

The decree was as follows :

This day came again the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decrees aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the land in the proceedings mentioned,

conveyed by Robert F. Howard and Eleanor C., his wife, to the appellee W. R. Womack, is not liable for the debts of William Allen, deceased, nor is the said Womack personally liable for said debts, or any part thereof; and that there is no error in the decree aforesaid, which appears to have been rendered by the said court on the 10th day of March, 1877, dismissing the bill of the complainants in the suit styled in the record "*Hawkins and Wife* v. *Wm. Allen's Administrator, &c.*"

The court is further of opinion, that the proceeds of the land sold to the appellant George J. Allen are first liable for the debts of William Allen, deceased, and should be applied in exoneration of said land to the discharge of William C. Allen's liability for his proportion, as of said debts as one of the heirs and distributees of said decedent; and whatever remains, if anything, of said proceeds after making such application, the same should be applied to the individual debts, in the proceedings mentioned, of the said William C. Allen.

The court is further of opinion, that on the petition, also in the proceedings mentioned, of the appellant Easley, the said Easley should have been admitted by the said circuit court a party to the suit aforesaid of "*Hawkins and Wife* v. *Allen's Adm'r, &c.*," and the three cases styled in the record—(1) "*Hawkins and Wife* v. *Allen's Adm'r, &c.;*" (2) "*E. Barksdale, Jr.* v., *Wm. C. Allen,*" and (3) "*George J. Allen* v. *W. R. Barksdale, Commissioner*"—should have been heard together, and should hereafter continue to be heard together in said circuit court until they are severally determined and ended.

The court is, therefore, further of opinion, that the decree of the said circuit court, which appears to have been rendered on the 10th day of March, 1877, in the three causes aforesaid heard together, whereby, among other things, the petition aforesaid of the said Easley was rejected and the

bill of the said George J. Allen was dismissed, is erroneous ; therefore, it is decreed and ordered, that the decree first aforesaid, by which the bill therein mentioned was dismissed as to the appellee W. R. Womack be affirmed, and the other decree aforesaid, also rendered on the 10th day of March, 1877, in the three causes aforesaid heard together, be reversed, and that the appellants recover against the appellee Elisha Barksdale, Jr., an attorney's fee and one-half of the residue of their costs by them expended in the prosecution of the appeal aforesaid here ; and that the appellee W. R. Womack recover against the appellants an attorney's fee in this court, said fees and costs to be taxed by the clerk of this court; and this cause is remanded to the said circuit court, with directions to admit the appellant Easley a party to the suit of " *Hawkins and Wife* v. *Allen's Adm'r, &c.,*" order all proper accounts, and for further proceedings, in order to final decree, in conformity with the opinion and principles hereinbefore expressed and declared; and in the further progress of the cause, the said circuit court, in determining and enforcing the liabilities of the several heirs and distributees *inter se* of William Allen, deceased, for their ratable shares of the debts of the latter, shall be guided by the principles laid down by this court in the case of *Lewis and others* v. *Overby, Adm'r and others,* 31 Gratt. 601, *et seq.;* which is ordered to be certified to the said circuit court of Halifax county.

DECREE REVERSED.