# Richmond

## MARY A. PAGE V. LUTHER T. PAGE.

### January 19, 1922.

#### Absent, Burks and Saunders, JJ.

1. TRUSTS AND TRUSTEES—*Resulting Trust—Conveyance to One, Consideration Paid by Another.*—When a conveyance of real estate is made to one person, and the consideration paid by another, it is presumed that the party advancing the money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf.

2. TRUSTS AND TRUSTEES—*Resulting Trust—Conveyance to One, Consideration Paid by Another—Parent and Child—Husband and Wife.*—But when the conveyance is to a wife or child, or to any other person for whom the purchaser is under an obligation to provide, and the consideration is paid by the husband or parent or party under such obligation, there is no presumption that such party advancing the money intended a benefit to himself, and no resulting trust is raised in his behalf.

3. TRUSTS AND TRUSTEES—*Resulting Trust—Conveyance to One, Consideration Paid by Another—Parent and Child—Husband and Wife—Rebuttal of Presumption.*—On the contrary, the inference where the consideration is paid by one under an obligation to provide for the grantee, is that the purchase was designed as an advancement to the person to whom the conveyance is made. It is, however, always a question of intention, and the trust in favor of the wife or child may be rebutted by parol proof, showing that the party intended the purchase for his own benefit exclusively.

4. TRUSTS AND TRUSTEES—*Resulting Trust—Conveyance to One, Consideration Paid by Another.*—In the instant case, the husband furnished all the consideration for the purchase of a house and lot, but the deed was to the husband and wife.

   *Held:* That no resulting trust in favor of the husband arose from the fact that he furnished all of the purchase money, but the deed would be regarded *prima facie* as making a valid settlement upon the wife to the extent of the interest in the real estate conveyed to her thereby.

5. TRUSTS AND TRUSTEES—*Parol Evidence to Establish Trust—Burden of Proof.*—In order to establish an express trust in real estate by parol evidence, the declaration of trust must be unequivocal and explicit, and established by clear and convincing testimony, and the burden of proof is upon the party seeking to establish such trust.

6. TRUSTS AND TRUSTEES—*Parol Evidence to Establish Trust—Burden of Proof—Case at Bar.*—In the instant case it was held that the husband had not established "by clear and convincing testimony," and by evidence which was "unequivocal and explicit," that he intended and directed the conveyance made to himself and wife to be made to himself alone.

7. PRINCIPAL AND AGENT—*Acts of Agent Binding on Principal—Notice and Knowledge of Agent—Case at Bar.*—A husband's agent gave the secretary of a building and loan association to understand that a deed for land purchased by the agent for the husband was to be made to both the husband and his wife as grantees, and the agent authorized the secretary to direct the deed to be so drawn. This action was within the scope of the agent's authority from the husband. Accordingly, the secretary of the building and loan association directed the deed to be drawn with the husband and wife as grantees, and the agent fully understood at the time the deed was taken that it was so drawn.

   *Held:* That the husband was bound by such action of, notice to, and knowledge of his agent.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for complainant. Defendant appeals.

*Reversed, and final decree.*

Colona S. Nuckolls and husband, by deed of date May 1, 1912, acknowledged on May 2, 1912, and recorded on May 3, 1912, conveyed to Luther T. Page (the appellee) and Mary A. Page, his wife (the appellant), a certain house and lot in the city of Richmond, in consideration of the sum of $2,619.00 purchase money, the entire amount of which was furnished by the appellee.

In January, 1916, the appellee filed his bill in the Chancery Court of the city of Richmond against the appellant, alleging that the purchase of said house and lot was made

from Mrs. Nuckolls by appellee acting through his father, J. A. Page, as his sole agent and as such entrusted with the whole matter; that it was never the intention of appellee nor the intention of his father to have any interest in said property conveyed to appellant; that the insertion of appellant's name in the deed from Mrs. Nuckolls and husband as one of the grantees was a mistake and oversight; that neither appellee nor his father had any knowledge or intimation that the effect of the deed was to convey an undivided one-half interest in said property to appellant; that appellee could account for the insertion of the name of appellant in the deed only by reason of the fact that a certain deed of trust, which is referred to below in the opinion of the court, was already executed and was in possession of the scrivener when the said deed from Mrs. Nuckolls and husband was prepared; that this mistake was due to an oversight of the scrivener; and that the effect thereof was not brought to the attention of appellee or of his father until on or about December 20, 1915, up to which time appellee believed that the title to said property was in himself alone. The bill sets out the nonresidence of the appellant; asks that she be proceeded against as such by order of publication and prays that the aforesaid deed from Mrs. Nuckolls and husband may be corrected, that the whole title to said property may be declared to be in appellee to the exclusion of appellant from all interest therein; that the court may impress the said property with a resulting trust in favor of appellee by virtue of the fact that he supplied the whole of the purchase money with the intention and belief that he was taking the title in his own name; and for general relief.

The appellant was accordingly proceeded against by order of publication; the depositions of the appellee, his father and mother and one Paul P. Shafer were duly taken and filed in behalf of the appellee, and the appellant failing to

appear, on April 4, 1916, decree was entered in the cause holding that the appellee paid the whole of said purchase money; that he did not intend to make any gift or settlement of any part of the property to or upon the appellant; that the intention of the parties to the transaction was to have the property conveyed to appellee alone; that the title was taken in the joint names of appellee and appellant through mistake and oversight and contrary to the intention of the parties; and the court accordingly decreed that the property is impressed with a trust in favor of appellee, who was accordingly declared to be sole owner of the entire beneficial interest therein, etc., and the cause was stricken from the docket.

On May 3, 1916, the appellant appeared by counsel and asked leave to file her petition reinstating the cause upon the docket, which by leave of court, in accordance with the statute in such case made and provided, was accordingly done. This petition alleged that during the existence of the marriage relationship of appellant and appellee, the appellee, in order to induce the appellant to live in the city of Richmond agreed that he would purchase and pay for the real estate aforesaid and have same conveyed to appellant and himself; that the deed from Mrs. Nuckolls and husband was made in pursuance of such agreement; and that there was no mistake whatever in such deed so conveying the property, the purpose of the conveyance being to give appellant one-half interest therein.

Subsequently the apellant filed her answer in the cause, taking the same position taken in her position aforesaid, with greater elaboration of allegations of details, and among the latter alleged that, after the father of appellee had selected the house and lot aforesaid as a purchase, appellee sent appellant from Cleves, Ohio, where the two were then residing, "to Richmond to look at and see if it (the property) suited her, as it had been agreed between them that

no house should be purchased unless respondent (appellant) was satisfied with it." That appellant "inspected the said house and lot  *  *  *  and approved of the purchase"; and that at that time appellee had money on deposit in the Planters' National Bank of Richmond amounting to $819.00 which he authorized appellant to draw out of bank and use in part payment of the purchase money for said property; and that the authority to draw the money out of bank existed, was evidenced by a certain letter from the cashier of the bank addressed to appellee and a letter from appellee to appellant which were filed as exhibits with such answer.

Thereupon, the depositions of appellant, her mother and a sister and of appellee were duly taken and filed in behalf of the appellant; and thereafter the depositions of the said father and mother of appellee were again taken and filed in behalf of appellee, the father being recalled as a witness a number of times, and various exhibits were filed along with the depositions.

Thereafter, on October 10, 1919, the decree appealed from was entered, which adhered to the holdings of the former decree of April 4, 1916.

*S. S. P. Patteson* and *J. H. Rives, Jr.,* for the appellant.

*Brockenbrough Lamb* and *Hill Montague,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The controlling question presented for our decision on the appeal in this case is one of fact. The law on the subject is not in controversy.

The appellee seeks by parol evidence to correct an alleged mistake in a deed and to establish (a) a resulting trust, or (b) an express trust, in his favor, on the ground that the ap-

pellee not only paid the whole purchase money, but intended and directed the conveyance to be made to himself alone. The law on these subjects is well settled and is admittedly correctly laid down in *Taylor* v. *Delaney*, 118 Va. 203, 86 S. E. 831.

In *Taylor* v. *Delaney*, the husband, Delaney, entered into negotiations with a land improvement company for the purchase of certain land. His wife attended to the payment of the purchase money, closing the purchase, and took the deed from the company in her name as sole grantee. The bill filed by the husband alleged that the purchase money was entirely furnished by him; that he directed his wife to have the property conveyed to him and her jointly; and that as the conveyance was not so made she held the land in trust, one-half for herself and one-half for him, in fee.

[1-3] (1) On the subject of the alleged resulting trust, the court, 118 Va., at pp. 207-8, 86 S. E. 832, quoting from *Irvine* v. *Greever*, 73 Va. (32 Gratt.) 411, said:

"The doctrine generally, if not universally, recognized is that when a conveyance of real estate is made to one person, and the consideration paid by another, it is presumed that the party advancing the money intended a benefit to himself and accordingly a resulting trust is raised in his behalf. But when the conveyance is taken to a wife or child, or to any other person for whom the purchaser is under an obligation to provide, no such presumption attaches. On the contrary, the inference in such case is that the purchase was designed as an advancement to the person to whom the conveyance is made. It is, however, always a question of intention, and the trust in favor of the wife or child may be rebutted by parol proof, showing that the party intended the purchase for his own benefit exclusively."

The opinion in *Taylor* v. *Delaney* thereupon continues as follows:

"In *Deck* v. *Tabler,* 41 W. Va. 332, 23 S. E. 721, 56 Am. St. Rep. 837, it is said that 'a resulting trust does not arise in favor of a person who furnishes money with which to purchase property, the conveyance being taken in the name of another, if there is a legal and moral obligation on the part of the former to provide for the latter, as where the parties are wife or child of the person whose funds have been so employed. The presumption that under such circumstances no trust was intended is one of fact, and not of law, and may be rebutted by evidence of circumstances tending to show the existence of a trust. Declarations of a husband after the death of his wife are not sufficient to establish a resulting trust in his favor in land purchased and paid for by him and by his direction conveyed to her.' In a note to this case in 56 Am. St. Rep., at p. 843, it is said: 'When a person making a purchase of land in the name of another and paying the consideration himself is under a natural or moral obligation to provide for the person in whose name the conveyance is taken, no presumption of a resulting trust arises, but it will be regarded *prima facie* as an advancement for the benefit of the nominal purchaser.'

"It is clear, therefore, upon the law, that no trust resulted to Delaney, even if it were conceded that he paid the purchase money, for the presumption would be that it was intended for the benefit of his wife. If, therefore, he prevails in this case it must be by proof of an express trust * * *."

[4, 5] (2) On the subject of the alleged express trust, the court held, as correctly summarized in the syllabus, as follows:

"In order to establish an express trust in real estate by parol evidence, the declaration must be unequivocal and explicit and established by clear and convincing testimony."

In the instant case, as in *Taylor* v. *Delaney,* no resulting trust in favor of the appellee arises from the fact that he

furnished all of the purchase money, but the deed will be regarded *prima facie* as making a valid settlement upon the wife to the extent of the interest in the real estate conveyed to her thereby. And in the instant case, as said in *Taylor* v. *Delaney,* if the appellee prevails "it must be by proof of an express trust." Upon this issue the burden of proof is, of course, upon the appellee, and the character of proof he must adduce is that above stated.

The controlling question of fact presented for our decision is, therefore, the following:

[6] 1. Has the appellee established the fact that he intended and directed the conveyance in question to be made to himself alone, by evidence which is "unequivocal and explicit," and "by clear and convincing testimony"?

The question must be answered in the negative.

The testimony for appellant and appellee is in irreconcilable conflict and in such direct conflict on many material matters that one rises from repeated readings of it with the conviction that the testimony of either one party and family witnesses or of the other party and family witnesses is almost wholly unreliable, for the testimony on both sides about material facts, undoubtedly known to these parties and those witnesses, cannot be true. Which is to be believed?

The reliability of the testimony of the appellee and of his father and mother is seriously discredited by the omission from the allegations of the bill, although otherwise in much detail, and from the testimony of appellee and his father and mother, taken in the cause before appellant made any appearance therein, of all mention of the fact that appellant was present at the time or took any part in attending to the matter of closing the purchase and taking the deed in question. In view of the high standing of counsel for appellee, we regard the allegations of the bill as containing the statement to counsel by appellee or his father, of the

facts of the case to be stated in the bill as represented to
such counsel at the time. And so far did the bill and this
testimony go in making out a case in which the appellant
had no connection with the transaction, that the bill omits
all mention thereof as aforesaid, and all three of these wit-
nesses testified that the mother of appellee made a loan
to him of the money he needed to pay the purchase money
for the property, in addition to the $1,800.00 borrowed by
appellee of the Virginia Building and Loan Association, and
they testify positively as to the details of this borrowing by
appellee of his mother. J. A. Page testified at that time
that when, acting as the agent of the appellee, he came to
pay the $2,618.00 balance of purchase money to J. Thomp-
son Brown, real estate agents for Mrs. Nuckolls, the ven-
dor, he (J. A. Page) obtained the $1,800.00 from the build-
ing and loan association and got the rest of the money
from the mother of appellee, and thus made up the $2,618.00
and paid it over to such real estate agents on May 3, 1912.
Appellee testifies at that time that all of the purchase money
except what was borrowed of the building and loan asso-
ciation was borrowed by him of his mother. The mother
testifies at that time that she lent this money to her son,
the appellee, and handed it to the father, J. A. Page, for
him to use in making up the purchase money aforesaid.
She goes into further details. She was asked if her son,
the appellee, gave her a note for this money and answers
as follows: "Yes, sir, he didn't right away, but two or
three days after he handed it to me, and said I had better
take it"; and she files the note referred to, which is for
$1,000, dated at Richmond, May 12, 1912, payable on de-
mand, and signed by the appellee.

As contrasted with this positive and detailed testimony
of the three witnesses last named, it is developed by the
proof introduced after the pleadings of appellant are filed,
and is expressly admitted by appellee and his father in

their subsequent depositions, that the money, in addition
to the $1,800.00 borrowed from the building and loan asso-
ciation, used to pay the purchase money to said real estate
agents for Mrs. Nuckolls, consisted of a balance of $818.00,
which belonged to appellee and was in the Planters' Na-
tional Bank at the time, and which he authorized his wife
to draw out of bank and which she did draw out of bank
and hand to J. A. Page, and which he used accordingly.
Moreover, it appears from such later proof, and is admitted
by appellee and J. A. Page in their later depositions, that
they both had prominently in mind when the negotiations
for the purchase from Mrs. Nuckolls was entered upon, that
this money belonging to appellee was in said bank and had
the fixed intention to use it to pay on account of such pur-
chase money. And all of this is so clearly shown by such
testimony, after the letter from the bank cashier and that
from appellee above referred to was filed as aforesaid by
appellant, and is especially disclosed in the letter of April
13, 1912, to appellee from his father filed in evidence, that
it is plain that both appellee and the father must have had
an ineradicable impression made on their minds at the time,
inducing an unforgetable recollection of the source from
which this money came, so that their testimony and that
of the mother first given as aforesaid as to such source has
the appearance of a pure fabrication. This later uncontro-
verted testimony shows that if the $1,000.00 was borrowed
of the mother at all, which is left in much doubt, this was
not done until in July or August, 1912, when, after an ab-
sence of at least four months in Cleves, Ohio, appellee came
to Richmond, so that the note aforesaid could not have been
handed to her as the mother testified and its date indicates
that it was not a genuine note. Considering these matters
in the most favorable light for appellee we are forced to
the conclusion, therefore, that he and his family witnesses
in their statements of facts are unreliable.

Again: J. A. Page, the father of appellee, on April 12, 1912, while appellant was with her husband at Cleves, Ohio, undoubtedly initiated in Richmond the transaction of the purchase of the property aforesaid, in the name of appellee as the purchaser and made an application to the building and loan association for a loan from it to appellee on such property as purchased by appellee, but not yet conveyed; and as a consequence the bond and deed of trust to secure to the association such loan were drawn by the attorney for the latter upon the assumption that when the deed from Mrs. Colona S. Nuckolls and husband came to be made it would be made to appellee as grantee. This explains the recital in the deed of trust to the effect that the real estate thereby conveyed is "the same real estate conveyed to Luther T. Page by deed from Colona L. Nuckolls and W. R. Nuckolls, her husband, by deed April, 1912, to be recorded." But this was purely an assumption, albeit a natural assumption, from the form in which the father of appellee had initiated the transaction. All of this, however, and the other evidence in the case tending to show that up to the time when appellant arrived in Richmond from Cleves, Ohio (about April 20th), the acts of J. A. Page and of the association were all in conformity with the expectation that the deed would be made to appellee alone (such as Mr. Shafer's testimony as to the custom of the association, the form of the bond and the recital aforesaid in the deed of trust, etc.), lose their force as evidence in behalf of appellee when it is considered that all of this was the result of action of the father before appellant arrived on the scene, and that there is evidence in the case for appellant which, if true, warrants the inference that appellee had led his wife to believe that he intended to have the property conveyed to them jointly, and at this time expected and intended to do so, if she insisted upon it as the condition upon which she would make her home in Richmond and

continue to live with him, and that appellee had so informed and directed his father to act accordingly; but that appellee and his father were in collusion to deceive appellant about the matter if they could, and they both allowed the transaction to proceed in the form in which it was begun until appellant came to Richmond and was there on the lookout for her interest in the matter. The further inference from the evidence for appellant is that, finding that appellant's name would have to appear in the deed as grantee to satisfy her, J. A. Page, in accordance with his instructions from appellee, thereupon, while appellant was in Richmond and before the deed from Mrs. Nuckolls and husband was drawn, directed that appellant's name be included in the deed as it was.

This theory seems to us to be more in accord with the whole of the evidence in the case, which seems reliable, than any other.

The theory of the bill of appellee, that the draftsman of the deed from Mrs. Nuckolls and husband had the deed of trust before him and was thereby misled into inserting the name of appellant as one of the grantees in the deed of bargain and sale, is wholly without evidence to support it. In the first place, the whole tenor of the deed of trust manifests that it contemplated that the deed of bargain and sale would be made to appellee alone as grantee. In the second place, there is absolutely no evidence that the scrivener of the latter deed had the former before him. There is, indeed, no testimony in the case undertaking to say who this scrivener was. The original deed is shown to have been on the form of J. Thompson Brown and Company, and the only inference which is consistent with the evidence is that the deed was drawn by some one in the office of J. Thompson Brown and Company, agents for Mrs. Nuckolls, the vendor. The deed was acknowledged by Mrs. Nuckolls and husband on May 2, 1912, before Edw.

H. Brown, notary public. Neither he nor any one from
the office of J. Thompson Brown was examined as a wit-
ness in the case. Neither Mrs. Nuckolls nor her hus-
band is examined as a witness, the only reason vouched in
the record for not doing so being the testimony of J. A. Page
to the effect that he couldn't find them in the city of Rich-
mond—that they had perhaps moved away. No effort to find
their whereabouts elsewhere is shown, nor any reason why
some one from Brown and Company's office was not exam-
ined. There is no evidence that the deed of trust was ever in
the office of that company. The deed of trust, after its draft
by the attorney for the building and loan association, was
mailed to appellee in Cleves, Ohio, signed and acknowledged
by him there on April 26th, mailed back on that day with a
letter to appellant of that date (see Ex. J. A. P. "Z-6"),
was acknowledged in Richmond by appellant on April 30th
before C. T. Loehr, notary public, who was also at that time
secretary and treasurer of the building and loan associa-
tion, and this acknowledgment was taken by Mr. Loehr in
his office according to the testimony of J. A. Page. Mr.
Loehr died before the depositions in the case were taken,
so we do not have his testimony. There is no evidence tend-
ing to show that Mr. Loehr drew the deed of bargain and
sale. The only evidence of any connection of his with the
latter deed is that of J. A. Page, who at one time says that
after the building and loan association agreed to lend the
$1,800.00, Mr. Loehr "went down to see Mr. Brown about
the deed"; and at one place in his depositions, he says that
on the occasion when the $2,618.00 was paid over to Brown
and Company, on May 3d, that company handed him (Page)
the deed of bargain and sale; that he did not open the deed
to see how the property was conveyed, but handed it to Mr.
Loehr. At another place in his depositions this witness
says that on this occasion "Mr. Loehr took it (the deed)
from J. Thompson Brown." That Mr. Loehr then read the
deed and said, "It's all right, Mr. Page, you can pay Mr.

Brown," and that witness never looked at the deed at all. This witness is asked, at another place in his depositions, "How do you account for this deed having been made out in the names of both your son and his wife instead of in the name of your son"? and answers: "I don't know how to account for it; I didn't see the deed until after I had paid the money."

The fact that the custom of the building and loan association (however universal according to Mr. Shafer's testimony), required the appellant as well as appellee to sign the bond for the money borrowed of the association if she was to be joint grantee of the property; and the fact that the bond and deed of trust were drawn and signed as they were, are not circumstances inconsistent with the association in fact lending the money in this individual instance upon the bond and deed of trust as executed, because the association, before the money was actually loaned, was, as a matter of fact, through Mr. Loehr, informed that the property was in truth conveyed to appellant as a joint grantee, and also as a matter of fact made the loan notwithstanding, Mr. Lohr, secretary and treasurer of the association, acting in the matter for the association as well as a friend of J. A. Page, read the deed of bargain and sale as it was in fact executed before the money passed and approved of the deed and lent the money on the bond and deed of trust as they stood, as is shown by the testimony of J. A. Page himself. It seems plain that the bond and deed of trust were drawn by one scrivener upon the assumption that the deed would be made to appellee alone, in accordance with the initial form of the purchase, and before the deed of bargain and sale was drawn. And that the deed of bargain and sale was drawn at a later time, after appellant arrived in Richmond, by another scrivener, who did not have before him the bond or deed of trust.

J. A. Page does not anywhere in his depositions testify

that he at any time directed that the deed of bargain and sale should be made to his son alone. He does deny that he ever gave any direction to anyone that the deed should be made to the son and appellant. His position is that he assumed that the deed would be made to his son alone and never knew the contrary until in December, 1915, just be· fore this suit was brought.

It seems to us extremely improbable that the deed of bargain and sale would have included the name of appellant as grantee without the direction or knowledge and consent of J. A. Page at the time. He initiated the transaction in the name of appellee as the sole purchaser. He, as agent for appellee, had control of the whole transaction from the be- ·ginning to the close of it, by the paying over of the purchase money through his hands and the taking of the deed. Even if appellant had undertaken without his knowledge to direct that her name be included as grantee in the deed, of which there is no suggestion in the testimony anywhere, surely the grantors or their agents would not, under the circumstances, have acted in the premises without the direction or known assent of J. A. Page directly or through some one known to be acting for him.

Upon consideration of all the evidence in the case, we feel that some one must have directed Brown and Company to have appellant's name included as grantee in the deed of bargain and sale. There is no evidence tending to show that appellant did this.

All the evidence in the case points to Mr. Loehr as the person who gave this direction to Brown and Company. The testimony of of J. A. Page shows that he entrusted this part of the transaction to Mr. Loehr. It is true that J. A. Page, as aforesaid, denies that he gave any one the direction to have the deed of bargain and sale made to appellant as one of the grantees. But this is absolutely inconsistent with what he testifies was the conduct of Mr. Loehr when the

latter read the deed of bargain and sale as aforesaid, at the time of its delivery by Brown and Company. Mr. Loehr then saw that appellant was one of the grantees; and his thereupon saying, "It's all right, Mr. Page, you can pay Mr. Brown," evidences unmistakably that Mr. Loehr found the deed to be in the form he expected it to be and which he knew J. A. Page expected it to be, for otherwise, being the man of character and experience in such matters, which J. A. Page and the other evidence in the record indicates him to have been, he would undoubtedly have called attention to the fact that the name of the appellant was in the deed as grantee. And especially would he have otherwise done this since appellant being a grantee put this transaction out of line with the uniform custom of his association in making such loans, as testified to by Mr. Shafer, in that the bond and deed of trust were drawn and executed upon the assumption that the appellee would be the sole grantee. Mr. Loehr must have been well assured of the fact that J. A. Page, acting for appellee, wished the deed of bargain and sale to be made as it was and that Mr. Loehr's association should make no objection to making the loan, although the deed was in that form, and should let the transaction be closed notwithstanding, as an exception to the custom of the association aforesaid, or Mr. Loehr would, on his association's account, have made objection to the form of the deed in the particular in question.

[7] The testimony of appellant on the subject, it is true, is vague, conflicting and inconsistent, but the preponderance of the evidence would seem to show that appellant and J. A. Page were present together with Mr. Loehr in Richmond, between April 20th and May 3rd, inclusive, at least on one occasion, and perhaps on more than one, and that both appellant and J. A. Page then gave Mr. Loehr to understand that the deed of bargain and sale was to be made to both appellee and appellant. That J. A. Page on the occasion, or

on one of the occasions referred to, authorized Mr. Loehr to direct Brown and Company to draw the deed accordingly. That this action of J. A. Page was within the scope of his authority from appellee. That Mr. Loehr was the only person who communicated with Brown and Company on the subject. That Mr. Loehr, as thus authorized by J. A. Page, acting for appellee, directed the deed to be drawn as it was drawn and executed. And that J. A. Page fully understood at the time the deed was taken that it was so drawn.

It is well settled that under such circumstances appellee is bound by such action, notice to and knowledge of J. A. Page, his agent. 2 Mechem on Agency (2nd ed.) sec. 1803, p. 1384; *Easley* v. *Barksdale,* 75 Va. 283.

Such view of the preponderance of the evidence on the controlling question of fact in the case, is strengthened by the consideration of the following matters.

The testimony of appellee is very positive that he never at any time during his married life contemplated buying a home in Richmond or of living there as his home, and that he bought the property in question solely as an investment. In a letter of his to appellant, however, dated January 28, 1912, filed in evidence, he says: "Now I got a nice letter from home; and they want us to come down there and buy a little home and live there. They want to sell *there* home and buy a nice place where they can have a big store and want us to take hold of it and see if we cannot be happy together. I think they know now they cannot separate us, and they know now that I love you, so they are willing to help us now. Write me at once and tell me just what you think and I will do as you say."

In this quotation it will be also noticed that there is a reference to the father and mother of appellee wanting to sell their home. One of the grounds much urged as discrediting the testimony of appellant is that she testifies that at some previous time appellee proposed to buy a lot from his

father and have it conveyed in their joint names; whereas in the depositions for appellee it is positively stated by appellee and his father that in 1912 and during many years prior thereto the father owned no real estate whatever. Either this statement in this letter is untrue, or this testimony of appellee and his father is untrue. Here is but another circumstance showing how little dependence can be placed upon the statements of the appellee.

Again: The testimony of the appellant and of her mother and sister is so full of many references to the fact that appellee continued to make frequent remittances to his father (once every two or three weeks or sometimes at intervals of as long as a month, during his married life, as testified to by appellee), against the remonstrances of appellant, and to the urging of appellant upon appellee of her wish that he would buy a home and take the title to it in their joint names, and to appellee's sometimes agreeing to do so and sometimes refusing to do so, and of the part which this played in the alternate coolness and warmth of the marital relations of the appellant and appellee,—all of which is so in accord with human nature and naturally to be expected under the circumstances,—that we are impressed with the truth of much of this testimony of and for appellant. And yet, appellee, in his testimony, unqualifiedly denies that during his whole married life there was ever any talk between him and his wife on the subject of his buying a home and putting it in their joint names, or that there was ever even any conversation between them "in reference to purchasing any property for a home!" And these positive denials are repeated time and again by appellee in his testimony. This leaves an impression very unfavorable to the credibility of appellee's testimony, especially as, in addition to the testimony of and for appellant on the subject, which seems to bear the *indicia* of truth, as aforesaid, and the letter above mentioned on the subject of buying a home in Richmond,

we find in a letter of appellee to appellant in evidence, of date of January 21, 1912, the statement that he had written to a person whom he names, asking him to try and get appellee a position as motorman, at some place not mentioned in the letter, and says that "If he gets me the job, why we can buy a little home out there and live more happy."

It is true that the fact that no express reference is found in the letters of appellee filed in evidence to any undertaking on his part to have the property in question, or any property, conveyed to his wife as joint grantee with himself, or to any conveyance to appellant, is a strong circumstance tending to show that no such intention ever existed; especially as appellant claimed to be able to produce letters containing such undertaking and failed to do so. But the correspondence in evidence, five letters from appellee to appellant and one from J. A. Page to appellee being introduced, is not inconsistent with the inferences we have above drawn as warranted by the preponderance of the evidence when the unreliability of the testimony of and for the appellee is considered.

However, even if we were mistaken in drawing the inferences aforesaid from the evidence, we cannot say that the appellee has established the fact that he directed the deed in question to be made to himself alone, by evidence which measures up to the legal standard required in such cases.

In view of this conclusion it is unnecessary for us to deal with a number of other circumstances in evidence, concerning occurrences following after the taking and the recordation of the deed of bargain and sale.

The decree under review will be set aside and annulled and we will enter our decree in favor of the appellant, on the ground that the appellee has failed to sustain the case alleged in his bill by that degree of proof which is required in such cases, and dismissing the suit, with costs to appellant.

*Reversed, and final decree.*