# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

WARREN W. BRANSOM v. WILLIAM S. BRANSOM.

September 27, 1928.

The opinion states the case.

*Harry R. Thomas* and *Robt. A. Hutchison*, for the appellant.

*Emery N. Hosmer, Ashby Williams* and *John W. Rust,* for the appellee.

CHINN, J., delivered the opinion of the court.

This suit was brought by William S. Bransom, the appellee (hereafter called the complainant), to compel his son Warren W. Bransom, the appellant (hereafter sometimes called the defendant), to convey to said complainant twenty-one acres of land in Arlington county which was conveyed to said Warren W. Bransom by deed from Mrs. Elsie A. Simmonds and Dr. Sidney J. Simmonds, her husband, dated February 3, 1920.

The gravamen of the bill is that complainant purchased and paid for the land above referred to with his own money; that at his own expense and with his own funds he erected a dwelling house and other buildings upon said property and moved into the dwelling and occupied it with his family; that the deed to the property was taken in the name of his son, Warren W. Bransom, with the understanding that the son should hold it as trustee for the complainant and would make him a deed for it whenever requested, which he now refuses to do, and that the facts and circumstances give rise to a trust in favor of the complainant which entitles him to require the defendant to deed the property to him.

The defendant, in both his answer and deposition, admits that the complainant furnished the cash payment for the purchase of the land from Mrs. Simmonds, and that he also paid the cost of the dwelling and of the material for a dairy barn which were afterwards erected on the property, but asserts in his answer that complainant loaned him the money with which to make

said cash payment, and erected the dwelling on the property with his permission; and that complainant advanced the money to build said house and to buy the material for the dairy barn. The answer prays that defendant be decreed to be the absolute owner of the property subject to a lien in favor of the complainant for the moneys advanced for the purchase of the same and for the erection of the dwelling and other improvements.

The general doctrine is, that when a conveyance of real estate is made to one person and the consideration paid by another, it is presumed that the party advancing the money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. But when the conveyance is taken to a wife or child, or to any other person for whom the purchaser is under legal obligation to provide, no such presumption attaches. On the contrary the presumption in such case is that the purchase was designed as a gift or advancement to the person to whom the conveyance is made. But this presumption is one of fact and not of law and may be rebutted by parol evidence or circumstances showing a contrary intention. *Irvine* v. *Greever*, 32 Gratt. (73 Va.) 411; *Steagall* v. *Steagall*, 90 Va. 73, 17 S. E. 756; *Page* v. *Page*, 132 Va. 63, 110 S. E. 370; *Clary, et als.* v. *Spain*, 119 Va. 58, 89 S. E. 130.

The fact that complainant supplied the consideration for the conveyance in the instant case is undisputed; but it is contended that, on account of the relationship of the parties, it must be presumed, in accordance with the doctrine above stated, that the purchase was intended as a gift or advancement to the appellant, and the evidence must be viewed in that light. If it were merely shown that the complainant

paid the consideration this contention would undoubt-edly be sound, but as the appellant alleges and claims that complainant lent him the money with which to buy the property, and bases his defense solely on that ground, the presumption of fact which usually arises out of the relationship of the parties in cases of this character does not attach. The claim that the money was a loan, of itself, negatives the supposition that it was a gift, and repels all presumptions to that effect which the general rule on the subject prescribes.

■ The sole question presented by the pleadings is, therefore, whether the money employed in the purchase of the property was loaned to the appellant for that purpose, as he alleges, or whether complainant intended it to be used as a benefit to himself; and this is purely a question of fact to be determined from all the facts and circumstances of the case.

The evidence is voluminous, and in some respects in conflict. Much of it is also immaterial, but the pertinent facts relating to the transaction, as deduced from the record, may be stated as follows:

Complainant had for many years been employed as a government clerk and lived in the city of Washington. He is the father of seven living children, four sons and three daughters, all of whom, with the exception of Warren, the appellant here, remained with their parents until maturity and contributed to the support of the family. Warren left home in 1904, when he was eighteen years of age, to shift for himself. In 1918, while living in Chicago, he enlisted in the World War, but when he was discharged from the army in July, 1919, he again took up his abode at his father's house. Upon his return from overseas he gave his parents to understand that he had been gassed in France, and, on account of his health, felt obliged to go on a farm.

He was practically without funds, and, after making a number of futile attempts to secure a farm for himself, he informed the family that he would have to go as a farmhand. The parents had welcomed this long-absent son with open arms, were sympathetic, and desired to keep him with them. Thereupon the father told him that if he could find a place in the vicinity of Washington which was within his (the father's) means he would try to secure it, and he would not have to go as a farmhand. Warren finally reported that he had found this tract of twenty-one acres which could be bought cheap. At the first opportunity complainant went out to look at the place and, being pleased with its location and possibilities, promptly called on Dr. Simmonds, the husband and agent of the owner, and entered into an agreement to buy the property for the consideration of $2,000.00 cash, and the assumption of mortgage liens against it amounting to $1,500.00. At that time complainant was seventy-three years old, and was entitled to retire from his position in the treasury Department on a service pension, but was holding over at the request of his superiors in order to clear up his work and his successor familiarized with it. Complainant's duties were important and required all his time, and for that reason, according to his testimony, the completion of the details connected with the purchase was left to Warren, who had the title examined and a deed prepared conveying the property to himself. Complainant's life time savings consisted of the small dwelling in which he then lived, $2,000.00 in first trust notes, $1,500.00 in Liberty bonds, and about $1,500.00 in a savings bank. In order to make the cash payment, he at once sold his trust notes, and when he had received a check for the proceeds, met Doctor and Mrs. Simmonds in the clerk's office of Arlington county,

where he indorsed the $2,000.00 check over to Mrs. Simmonds, and paid the necessary fees and tax to have the deed recorded, for which a receipt was given in Warren's name.

Looking forward to his retirement and making the place a home for himself and his family, including Warren, almost immediately after the purchase was consummated, complainant furnished Warren $500.00 with which to buy a team and the necessary farming equipment, and shortly afterwards began to make plans for the erection of a dwelling house on the place. After deciding upon the house he wished to build, complainant purchased the material and contracted with mechanics to do the work. At the time the building was started Warren had made arrangements to live with a neighbor on an adjoining place, and complainant was closely confined to his work, so it was understood that Warren should superintend and assist in the construction of the house.

In order to raise funds for the erection of the dwelling and other improvements for the new home, complainant disposed of his Liberty bonds and house in Washington and exhausted all his other resources, and finally had to employ a part of his salary for that purpose. Complainant had reason to believe that the house would be ready for occupancy by November 1st of that year (1920) and had sold his Washington residence under an agreement to give possession of it on that date, but owing to lack of diligence on the part of Warren and other circumstances, in the fall of 1920 had to take personal charge of the work and carry it to completion. The house was finally finished in February, 1921, and complainant and his wife, together with their daughter, Mrs. Luckett, her husband and child, and Warren, at once moved into the new home.

In the early part of 1922, the $1,500.00 mortgage became due, and being without funds to meet it, complainant saw one of the officials of the Federal Farm Land Bank with a view to borrowing $2,500.00 on the property to take up the loan and provide extra funds for use on the place. A loan of $2,200.00 was finally obtained from the Federal Land Bank of Baltimore for which Warren executed a deed of trust on the property as security. The stock issued by the bank as incident to the loan was issued in Warren's name as the borrower, but complainant from that time on paid the required semi-annual installments of principal and interest on account of the loan, and Warren turned over to him all the checks which the bank sent him as dividends on the stock.

Subsequently Warren went into the dairy business, and complainant paid $650.00 for the material for a dairy barn built on the property for defendant's use in the business.

Shortly after the death of complainant's wife in June, 1926, Warren informed complainant that he was to be married, whereupon the father expressed his pleasure and told him he hoped he would bring his bride there to live. The only response made by Warren was that he had an offer to go south. Complainant then asked Warren if it were true, as he had heard from various sources that he (Warren) had told his intended wife that he owned the property. Warren neither affirmed or denied it, but begun to heap abuse on his father, whereupon complainant demanded that the defendant give him a deed for the property. The defendant refused; assigning as the sole reason for such refusal that he had promised his mother a short time before she died that he would not deed the property to his father. A few weeks afterwards complainant

instituted this suit. It may be noted that while the defendant denied that complainant went to see Dr. Simmonds or made any agreement with him for the purchase of the property, complainant's statement to that effect is fully corroborated by Dr. Simmonds, who gave the details of the transaction and says he understood complainant was the purchaser of the property and he was for that reason surprised to find that the defendant was named as the grantee in the deed.

The evidence further shows that from the time the property was purchased in addition to providing for the family, complainant paid all the expenses incidental to ownership, such as interest on the mortgages, insurance, taxes and general up-keep, and although Warren kept for his own use all he made from the dairy and his farming operations, he never at any time asserted a right to it, or exercised dominion over it; that he stated to one of the contractors when the house was being built, that his father owned the property; and on one occasion when he was solicited to give a written option of sale for a part of the land, he consulted and obtained his father's approval before he agreed to sign the paper.

As opposed to the facts and circumstances above recited, we have appellant's bare statement that complainant agreed to loan him the money. In substance, his testimony is that when he came back from France he told his father he wanted to go to the country but did not have the money to purchase a farm and would have to rent one or work for some one else, whereupon complainant told him if he could buy a place to suit him, he (complainant) would lend him the money; that after discovering the Simmonds place was for sale, he himself made the contract with Dr. Simmonds, had the title examined and the deed prepared, and complainant took no part in the transaction except to pay the purchase money.

In respect to this point the defendant admitted on cross-examination that the purchase money was not turned over to him, but was paid directly to Mrs. Simmonds by the complainant himself; that there was no understanding as to the payment of the alleged loan, or loans; that he kept no account of his father's expenditures on the property, and had never inquired anything about it; and had never paid or offered to pay any part of the purchase money, principal or interest.

Considering all the facts and circumstances we do not think the evidence is sufficient to sustain the allegation that complainant loaned the defendant the money which he supplied for the purchase of the property in question. On the other hand, we think the evidence shows that complainant furnished the money and purchased the property himself with the intention, as he says, of providing a home for himself and his family upon his retirement from government employment, and at the same time enable his son to follow the occupation he desired. The whole course of his conduct shows this, and every circumstance connected with the matter likewise shows that the defendant recognized this intention and regarded the complainant as the owner of the property.

The circumstances of the case are unusual and we are not aware of any judicial decision in which a similar state of facts were involved, but upon the whole case we are of the opinion that the decree of the lower court is in accordance with the principles of equity and good conscience, and violative of no settled principles of law, and the same should be affirmed.

It is finally contended by the defendant that he is entitled to a three-sevenths interest in the property by virtue of the assumption, under the terms of the con-

veyance, of liens thereon amounting to $1,500.00, three-sevenths of the purchase price.

At the time the property was purchased the liens thereon were not due, and the deed having been taken in the name of the defendant, the existing liens were necessarily assumed by him. In the subsequent transaction of obtaining and securing the loan from the Federal Land Bank to take up said liens, the defendant acted at the direction of the complainant, and, in the view we take of the case, as trustee for him. The complainant has paid the regular installments of principal and interest on the last mentioned loan, and the defendant has paid nothing. He has not, therefore, actually paid any part of the purchase money for the property, and such being the case, we do not think he is entitled to any interest on the ground that he is a joint purchaser thereof. However, in granting the prayer of the bill, the learned chancellor of the court below decreed that, upon the delivery to the complainant of a deed for the property, he should execute and file with the clerk of the court a bond with good security in the penalty of $2,500.00, conditioned to save the defendant harmless from any liability by reason of said defendant having signed the note or bond evidencing the indebtedness of the Federal Land Bank of Baltimore and secured by mortgage on the property.

We think this provision of the decree adequately protects the defendant against any liability he may have incurred on account of said debt.

*Decree affirmed.*