# Richmond

J. S. EATON, FIRST NATIONAL BANK OF HARRISONBURG,
VIRGINIA, AND HARRISONBURG GROCERY COMPANY,
INC. v. HENRIETTA V. DAVIS, ET ALS.

November 14, 1935.

Present, All the Justices.

The opinion states the case.

*George S. Harnsberger* and *John T. Harris,* for the appellants.

*S. D. Timberlake, Jr.,* and *Glenn W. Ruebush,* for the appellees.

Hudgins, J., delivered the opinion of the court.

Henrietta V. Davis, when granted a divorce from her husband, J. S. Eaton, with the permission of the court, resumed her maiden name. She obtained a decree for alimony payable in monthly installments of $60 each. By another decree, entered on July 25, 1929, this was reduced to $50 per month. At that time the husband owned in fee, eleven tracts or parcels of land, and in addition, there had been conveyed to him and his wife jointly, two lots in the town of Elkton, on which had been erected a brick building used by the husband, then and subsequently, as a store, and referred to in these proceedings as the storehouse property.

Sometime after the entry of these decrees for alimony, J. S. Eaton confessed judgment in favor of several creditors, and executed two deeds of trust conveying certain parcels of his real estate to trustees to secure other creditors. This suit was instituted against J. S. Eaton by some of these lien creditors for the purpose of subjecting his real estate to sale, in the discharge of the liens thereon. Henrietta V. Davis became a party to the cause by petition, in which she alleged the fact that she had obtained the decrees for alimony, and was the owner of a one-half undivided interest in the storehouse property, and prayed that the court protect her rights in her husband's real estate, or its proceeds, if sold.

The commissioner, to whom the cause was referred, found, that while an extract of the decrees for alimony had not been recorded in the judgment lien book, the beneficiaries named in the deeds of trust had accepted their respective securities with full knowledge that the divorced wife had obtained a decree for alimony, and that the husband from time to time had paid her alimony in obedience to the decrees. On approval of this finding of fact by the court, it held, that the decrees for alimony, from date of entry, constituted a lien on all the real estate of the husband for the sum presently due, or which might thereafter become due, and that such lien was superior to the liens created by the above mentioned judgments and deeds of trust. This adjudication is in accord with the rule announced in *Isaacs* v. *Isaacs,* 117 Va. 730, 86 S. E. 105, L. R. A. 1916B, 648; referred to with approval in *Bray* v. *Landergren,* 161 Va. 699, 172 S. E. 252; *DeHart* v. *DeHart,* 164 Va. 455, 180 S. E. 307; *Gain* v. *Gerling,* 109 W. Va. 241, 153 S. E. 504; and has not been changed by the 1932 amendment to Code, section 6471 (Acts 1932, ch. 260).

We are asked to overrule the case of *Isaacs* v. *Isaacs, supra,* on the ground that it "fails to take into consideration the statutory provision regulating the creation of a legal lien and the rights and priorities acquired thereby." It appears from the opinion that this court, when the case

was first before it, declined to pass on the question of the extent and dignity of a lien created by a decree awarding alimony, but it was reversed on other grounds, with the statement that "The question (the extent and dignity of such a lien) is one of great interest and importance, and should only be decided after full investigation by counsel and the court." (See *Isaacs* v. *Isaacs,* 115 Va. 562, 563, 569, 79 S. E. 1072, 1074.) Some two years later, 1915, after counsel and the court had full opportunity to make a thorough investigation of the question, this court announced the principle applied by the trial judge in this case.

It has been twenty years since the publication of that opinion, in which time the statute law of the Commonwealth has been codified by eminent jurists, who saw no reason to suggest a change, or modification of the rule announced. During that period the legislature has adopted several amendments to appropriate sections of the Code, but none which restricts, or limits, the rule in so far as it is applicable to the facts in this case. Under the circumstances we see no reason to change the rule.

The next assignment of error is based on the action of the court in ordering a sale of the storehouse property without determining whether J. S. Eaton was entitled to an allowance for permanent improvements he claims to have erected thereon.

While, as stated, this is a creditors' suit, the main controversy is between the divorced wife and the divorced husband, with the creditors of the latter waiting and hoping that the husband will eventually establish his claim against the wife, which will redound to their benefit. The facts are, that in August, 1895, when J. S. Eaton married Henrietta V. Davis, he had a few pieces of household furniture, and she had some bed covers and canned fruit. As she phrased it, "he had a nickel and I had a nickel," which constituted all of the property either owned. After the marriage he worked as a laborer in a tannery, as a janitor, and at other small jobs, making from $1 to $1.50 per day. By self-denial and frugality, in 1898 they were

able to buy for some $450 a very modest home in Elkton. Title to the property was conveyed to the husband. In 1910 the two lots in question were conveyed to the husband and wife jointly, for a consideration of $300. In 1912 there was erected on these lots a frame building in which they started a grocery store. The wife did her house work early in the morning and late at night, and spent most of the day working in the store, sometimes with, and sometimes without, her husband's help. In 1914 this frame structure was destroyed by fire. With the insurance money and with their savings, a brick building was erected at the cost of some $3,500. By 1922 or 1923 the husband with the active assistance of the wife had acquired the real estate mentioned, which in 1933 was valued by the commissioner at $17,500.

Just when or what disturbed the domestic bliss of this couple the record does not disclose, nor is it material for the decision of the case. It does appear that in 1923 they were not on good terms with each other. At this period the husband was spending a good deal of his time away from home. His wife stated he would "come back once in a while, just in and out, to look after the things he had there to look after." It was in the same year, 1923, that an addition was made to the storehouse; the husband claims at a cost to him of $4,500. Some two years later the wife instituted a suit for divorce. From 1923 or 1925 (it is not clear which year), the husband has continued to conduct a mercantile business in the storehouse, without the assistance of Henrietta V. Davis.

Appellants contend: (1) that the scrivener, in preparing the deed to the two lots in question, inadvertently included the name of the wife as grantee, and that inasmuch as the husband paid all the purchase money, equity should declare a resulting trust in his favor; (2) that if the husband is mistaken in this contention, then he is entitled to an allowance for the improvements erected on the lots, and that the court erred in not determining the amount due for such improvements before ordering a sale.

■ The trial court correctly held that the husband was not the owner in fee of the storehouse property, but ordered a sale without determining what compensation, if any, was due the husband for the permanent improvements made on the two lots. We think that question should have been adjudicated before the sale was ordered. However, as the appellants have requested us to decide the question, without remanding the case, we will determine it on this record.

■ The general rule is that where a husband spends his own money in permanent improvements on real property owned by the wife, such moneys are presumed to be gifts or expenditures for her benefit. *Page* v. *Page,* 132 Va. 63, 110 S. E. 370; *Edmonds* v. *Edmonds,* 139 Va. 652, 124 S. E. 415. Appellants practically concede that this general rule is applicable to the purchase of the property in 1910, and to the improvements made in 1914, while the parties were living together as husband and wife. But they contend the rule is not applicable to the improvements made in 1923, for the reason, that at that time the parties were not living together as man and wife. The inference that such expenditures were made for the benefit of the wife arises from the fact that the husband is under both a moral and legal obligation to support and maintain the wife.

The principle is stated in *Irvine* v. *Greever,* 32 Gratt. (73 Va.) 411, 417, 418, thus: "The doctrine generally, if not universally, recognized is, that when a conveyance of real estate is made to one person, and the consideration paid by another, it is presumed that the party advancing the money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. But when the conveyance is taken to a wife or child, or to any other person for whom the purchaser is under an obligation to provide, no such presumption attaches. On the contrary, the inference in such case is that the purchase was designed as an advancement to the person to whom the conveyance is made. It is, however, always a question of in-

tention, and the trust in favor of the wife or child may be rebutted by parol proof, showing that the party intended the purchase for his own benefit exclusively."

The only evidence offered to rebut the inference consists of the testimony of the husband and two of the workmen who assisted in constructing the building. The testimony of the husband is not convincing. He stated that he did not know that his wife was named as grantee in the deed until 1923, when the fact was called to his attention by one of the workmen. At that time the addition was one-half completed, and as soon as he verified the information he immediately stopped the workmen and kept them idle for about an hour. Then without consulting his wife, the cotenant, he resumed the work and completed the building. The evidence establishes that as soon as the grantees acquired the property the deed was admitted to record, and returned to the husband, and that he thereafter kept it in his safe; that the property was assessed for taxes in the name of both grantees, the taxes paid and the receipts retained; the building on the property was kept insured for more than thirteen years, in the name of both grantees. When the property was destroyed by fire, $800 in insurance was collected and we assume that the insurance company named both the husband and the wife as payees of the check given in settlement therefor. When the husband was asked on cross-examination about these matters his answers were evasive, or he stated that he didn't know, that the policies of insurance were destroyed as soon as they expired.

Most of the testimony introduced in behalf of the husband was evidently offered to prove that the permanent improvements made in 1923 were partly completed before the husband knew that he was not the owner in fee of the lots. We think it wholly fails to establish this fact. The evidence, as we view it, proves that the husband, with full knowledge that his wife was cotenant of the lots, during a temporary separation and without consulting her, made certain permanent improvements upon

their joint property, and the evidence offered on behalf of the husband and his creditors is not sufficient to rebut the presumption that such improvements were made in fact for the benefit of the wife.

But even if we are mistaken in this conclusion, the husband would gain nothing. He admits that he has had exclusive possession of the storehouse property for more than twelve years, and that he has never accounted to his cotenant for rents and profits for its use. Under the circumstances, if he is entitled to any compensation, his cotenant is entitled to an accounting for the rents and profits. To defeat such accounting the statute of limitation cannot be invoked, because in accounting between cotenants, improvements are regarded as paid for *pro tanto,* by the rents as they accrue. The rule is stated by Judge Tucker in *Ruffners* v. *Lewis' Executors,* 7 Leigh (34 Va.) 720, at page 744, 30 Am. Dec. 513, thus: "* * * whether the act of limitations be or be not relied upon, the claim for improvements in any year will be liquidated, in whole or in part, by the rents and profits of that or any succeeding year." See *Graham* v. *Pierce,* 19 Gratt. (60 Va.) 28, 100 Am. Dec. 658; 7 R. C. L. section 38, pp. 842, 843.

The wife made no demand upon her husband for rents or profits until he had filed an answer and cross-bill to her original petition claiming the property in fee, and in the alternative setting up his demand for compensation for the improvements. Under the evidence in this case, it seems reasonably clear that the husband at the time he made the improvements on his and his wife's property, intended his wife to be benefited thereby, and that the wife, although she had obtained a divorce, with full knowledge that he was occupying property owned by them jointly, made no claim upon him for rents, until her rights in the property, as cotenant, were attacked. A reasonable inference from her silence is that she did not intend to charge him with rents, so long as he paid with reasonable regularly the $50 per month awarded her by the court.

■ Hence we are of opinion that the trial court, before ordering a sale of the property, should have decided that the husband was not entitled to any compensation for improvements, and that the wife was not entitled to an accounting for the use and occupation by her husband. To this extent the decree from which this appeal is taken will be modified, and, so modified, it will be affirmed.

*Modified and affirmed.*