# Richmond

## C. H. Williams *v.* Miriam Powers and Loretta Ginther.

### March 11, 1937.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Louis B. Fine,* for the appellant.

*Tom E. Gilman* and *R. Triplett,* for the appellees.

Hudgins, J., delivered the opinion of the court.

C. H. Williams instituted this suit against Miriam Powers and Loretta Ginther, the heirs at law of his deceased wife, for the purpose of obtaining the fee simple interest in an apartment building situated in Portsmouth, Virginia, legal title to which was in the wife at the time of her death. The chancellor held that he was not entitled to recover, and dismissed the cause.

Mr. and Mrs. Williams were married in 1913, and lived together in Portsmouth, Virginia, until the death of Mrs. Williams in 1931. At the time of her death she held title to four lots at or near the corner of Hatton and Holladay streets, in the City of Portsmouth, Virginia. Upon three of these lots a building containing ten apartments had been erected. Mrs. Williams died intestate leaving her husband surviving, and two married sisters, Miriam Powers and Loretta Ginther, her heirs at law. The husband contends that while title to the real estate was in his wife, he furnished all of the money to buy the lots and to construct the building, and

that the trial court erred because the "evidence makes out a case of:

"1. An express parol agreement by the wife, and the breach thereof by her, which impresses the property with a resulting trust in favor of the husband for the entire property, and/or

"2. A constructive trust because of the confidential relationship between the husband and wife wherein the wife fraudulently caused the husband to convey a fourth lot to her and having her husband construct an apartment, manage the same, improve the same, rent the same and deceitfully refusing to carry out the agreement."

It was clearly established that the wife purchased the three lots for $2,475, and received a deed for them in her own name. The husband testified that when he was first married, he, in his wife's name, subscribed to or purchased $1,000 in building and loan association stock, and that he intended to, and did give this stock to his wife; that for nine years or more he gave her $10 per week, spending money. He also said that his wife's father, who had lived with them from 1915 to 1923, earned more than $4.00 per day, and that from time to time he gave her substantial sums of money. Other witnesses stated that Mrs. Williams was a woman of very frugal habits, that she did all of her household work, made other sacrifices to save money, and was a very efficient manager of her financial affairs. It was conclusively established that she bought and paid for the three lots before her husband knew she was contemplating such a move, or from what source she obtained the money with which to pay for them. The mere fact that a husband makes gifts of money to his wife, which money she later uses to buy real estate, does not entitle the husband to any right or interest in such real estate, other than his contingent right of curtesy.

The wife determined to erect an apartment building on her three lots. In October, 1919, an architect was consulted, and plans and specifications were examined. Before letting the contract for the erection of the contemplated building,

the husband and wife decided a fourth lot, adjacent to the three lots owned by the wife, was needed for beauty, light and air. The husband furnished $3,100, the purchase price of this lot, and at the time told his wife that inasmuch as she had title to the three lots, she might as well take title to the additional lot. The deed was made accordingly.

The general doctrine is that if a purchaser of real estate pays the consideration and takes title in the name of another, the presumption is that such purchaser intended some benefit for himself, and a resulting trust is raised in his behalf. But when the conveyance is taken in the name of a wife or child, or any other person whom the purchaser is under obligation to support, no such presumption attaches. On the contrary the inference in such case is that the purchase is designed as an advancement to the person to whom the conveyance was made. This inference, of course, may be rebutted by proof showing that the party intended the purchase for his own benefit exclusively. *Eaton* v. *Davis,* 165 Va. 313, 182 S. E. 229; *Irvine* v. *Greever,* 32 Gratt. (73 Va.) 411; Perry on Trusts (7th Ed.) volume 1, section 143.

The record discloses no contemporaneous evidence, at the time the $3,100 was paid for the fourth lot, to rebut the presumption that the purchase was designed as an advancement to the wife. Therefore before any improvements were erected on any of the lots, title to them, in the wife, was full and complete.

In support of the contention that a constructive trust was created, Mr. Williams testified that in consideration of his furnishing all the money to pay for the construction of the building, the wife agreed to convey the property to him. He filed in evidence a number of his own checks marked paid. These checks were undoubtedly given in payment of labor and material used in construction of the building, but few, if any, of these checks represented money owned exclusively by Mr. Williams. The money used to pay for the construction of this building was obtained from three sources: (1) Several thousand dollars was undoubtedly paid by the husband out of his savings and accumulation, but he

failed to show just how much he so paid. (2) The wife used several thousand dollars of her own money in payments on the construction of the building. She obtained the money so used from three sources: (a) Sums given her, from time to. time, by her husband, to be spent on herself; (b) Sums paid her by her father during the eight or nine years he lived with her, included in these gifts or payments was an automobile given her by her father, which she sold for $600; (c) $2,250 received from the sale of property which she inherited from her mother. (3) $23,000 used in construction was loaned the parties by different banks who took as security deeds of trust on the four lots and the building then in the course of construction. The proceeds of these loans were placed in the bank to the credit of the husband, and checks were given by him against the deposits to pay bills presented by the contractor, and others, for the erection of the building. The evidence, therefore, not only fails to establish this contention, but the personal checks filed as exhibits, by the husband, are not corroborative evidence of his testimony on the subject.

The sums borrowed from the bank seem to have been repaid from the rent of the building. In 1923 another $3,000 was borrowed, and in 1926 other sums were borrowed, with the lots and building given as security for the payment. The proceeds from these loans were used by the husband and wife in making changes, alterations, and additions to the apartment house. These loans were likewise paid out of the rents from the apartments. This successful financial venture was conceived by the wife, and executed with the help and assistance of her husband.

The only evidence which tends to show an understanding or agreement to convey the property to the husband is found in his testimony, and the testimony of Mrs. Mary B. Moore. On this point the husband said: "She says, 'After the building is put up—' she said, 'Well, everything is in my name, and I am going to make a deed to it after the building is put up.' After we moved in the apartment I said, 'Everything is in your name. You have got

advantage of me. Everything I have earned and saved up all of my life is invested in this property and you have got advantage of me, and if anything happens to you I don't know what would become of me,' and she said, 'I am going to make you a deed to this property,' and it just went on from time to time and she kept on making those promises and never did do it. Just before she got down sick the last time she and I was in Norfolk one afternoon, and I didn't mention it myself, but she was the one who mentioned it. She said, 'I have got to have a deed made. I have got to attend to that.' That is the last time I and she was ever in Norfolk."

Mrs. Mary B. Moore testified that sometime in 1920 or 1921 she heard Mrs. Williams state to a salesman in the grocery store "that if I (Mrs. Williams) go before he (Mr. Williams) the apartment is his, and if he goes before I do, it is already mine."

These loose statements, attributed to the deceased wife by the two witnesses, are wholly insufficient to establish any contractual relationship or understanding between the husband and wife. Indeed, after the death of the wife, a memorandum in her handwriting, but not signed, was found among her papers, in which she stated that it was her desire that her husband have the property at her death, and enjoy the income therefrom for life, and at his death it should pass to her sisters, the appellees here.

When we consider the evidence as a whole, it discloses that the wife committed no fraud, mistake or breach of good faith in her dealings with her husband. It does disclose a case where the husband, with full knowledge of the facts, furnished some of the money, the exact amount not being proven, to construct a building upon lots owned by the wife. There was no proof of any promise to repay the husband for the money advanced or furnished by him, or to convey any specific interest in the real estate involved. In such transactions between husband and wife, a gift is presumed.

Under Code, sections 5139a and 5264, Mr. Williams is entitled to a life interest in all the real estate of which his

wife died seized and possessed, with a vested remainder in the heirs at law, who are the appellees. This disposition of the property is in exact accord with the expressed understanding and intention of Mrs. Williams.

We find no error in the decision of the learned chancellor below, and the decree will be affirmed.

*Affirmed.*