# Richmond

HANNON E. NORRIS, ET AL. V. JOHN S. BARBOUR, ET AL.

January 10, 1949.

Record No. 3413.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan, Staples and Miller, JJ.

724

*Hannon E. Norris* and *Armistead L. Boothe*, for the appellants.

*Christopher B. Garnett, Charles Pickett* and *James Keith*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On June 17, 1932, C. E. Wager, then a resident of Washington, D. C., executed and delivered to John S. Barbour,

trustee, his bond in the sum of $20,000, payable one year after his death, with interest from maturity until paid at the rate of six per cent. per annum. The bond declared on its face that it was given and received, and that the proceeds were to be applied by the trustee according to the provisions of a certain declaration of trust that day drawn in duplicate and signed by Wager and the trustee.

The declaration of trust provided that "the object of this trust is, first, to secure" a personal indebtedness therein described as due to John S. Barbour, and "thereafter" to "make proper and irrevocable provision during my life for certain of my brothers and sisters and their children."

The trust agreement imposed upon the trustee the duty "upon the maturity of this bond" "to collect the same and devote the proceeds thereof" (1) to the payment to Barbour of Wager's note of $1,000, dated June , 1932, payable on demand, or such portion thereof as might "remain unpaid when the said bond shall have been collected;" and (2) to divide the residue into seven equal parts, to be paid severally to each of Wager's sisters therein named, or their descendants, and the descendants of certain of his deceased brothers therein named.

For his services the trustee was to receive "such compensation as may be proper, but in no event to exceed five per centum."

This declaration of trust was signed, sealed and acknowledged both by Wager and Barbour.

On the same day Wager executed his will in which he named Barbour as his executor. He devised to his wife, Cornelia N. Wager, their house and lot therein described as "premises 1718 Euclid Avenue Northwest in the City of Washington," "for and during the term of her natural life in lieu of her dower, as well as of her distributive share in my estate should she survive me," upon the condition that she pay the taxes and keep up the repairs on the property. He devised all the rest and residue of his estate to be divided into seven equal parts, to be paid to the same beneficiaries

and in the same proportions as those stated in the declaration of trust.

Several years later, by a deed in which his wife united, Wager disposed of the Euclid avenue property in Washington. He and his wife acquired in their joint names certain real estate in the town of Culpeper, Virginia, to which they removed and thereafter resided.

On October 21, 1943, Wager died and shortly thereafter his will was probated in the clerk's office of the Circuit Court of Culpeper county. Despite the sale of the real estate in the city of Washington, in which he had devised her a life interest, he made no further provision for her in his will. Thereupon Mrs. Wager, in the manner provided by the statute (Code, sec. 5276, as amended), executed, acknowledged and recorded in the clerk's office a renunciation of the will and her election to claim such part of her husband's real and personal estate as she would have been entitled to if he had died intestate. No children had been born of the marriage, nor had the couple or either of them adopted a child. Neither had been married before.

In August, 1944, Barbour, as trustee under the declaration of trust, and as executor named in the will, filed his bill in chancery, making as parties defendant the widow, the beneficiaries in the declaration of trust, and others, asking for the guidance of the court in the settlement of the estate and the administration of the trust. He alleged that notwithstanding the renunciation by the widow of the will, the trust was valid and sufficient to bar her dower and distributive rights in her husband's estate. The distributees filed a joint answer adopting the allegations of the bill.

The widow filed a demurrer, answer and cross-bill, asserting in substance that the bond and trust were purely voluntary and unsupported by consideration deemed valuable in equity; that they were merely a scheme to defraud her of her expected distributive share in her husband's estate, and that hence they should not be enforced. The demurrer was overruled. In the meantime the widow had died on

October 2, 1944, and the suit was revived in the name of Hannon E. Norris, her administrator.

The principal assignment of error, and that to which we will first direct our attention, is to the action of the court in decreeing that the $20,000 bond and declaration of trust constituted a valid claim which should be paid and discharged out of the assets of Wager's estate.

According to the value of the personal estate as shown in the decree appealed from, the payment of the bond with accrued interest will exhaust that asset, leaving nothing to apply on the widow's distributive share.

The appellants insist that the bond and trust are not enforceable in the present equitable proceeding "as a gift, because there was no delivery of property as required for a valid gift, but only a delivery of a promise." They further say that the bond "cannot be upheld as a contract, for lack of consideration, as equity will refuse to accord to a seal a conclusive presumption of consideration contrary to actuality; *a fortiori* if by such accordance equity would be furthering a device to deprive a widow of her distributive share."

The appellees, on the other hand, say that the bond and accompanying trust instrument, both under seal, executed and delivered eleven years before the death of Wager, constitute a valid *debitum in praesenti*, binding on him personally and on his estate.

Under the statutes of this State (Code, secs. 5273, 5276) the surviving spouse is given a distributive share in the surplus (after the payment of funeral expenses, charge of administration and debts) of the personal estate of his or her consort who dies intestate. Code, sec. 5273, as amended, fixes the amount of this distributive share, depending upon whether the intestate left surviving children or descendants of the marriage which was dissolved by the death of the intestate, or of a former marriage, or by legal adoption. Code, sec. 5276, as amended, fixes the amount of the distributive share where the surviving spouse renounces the will of his or her deceased consort.

In Minor's Institutes, 2d Ed. Rev., Vol. III, pp. 528, 529,

the distinguished author points out that these statutes have their origin in the common law which provided for the allowance to the wife and children of the intestate "reasonable parts (*rationabiles partes*)" in his estate.

As Mr. Minor points out, "So far as the children are concerned we have nothing like the doctrine of *rationabiles partes*, but as to the wife we have a statutory provision very similar to it, and doubtless suggested thereby." (Vol. III, p. 529.)

The author then outlines the provisions of the Code of 1887, sec. 2557 (now Code, sec. 5273, as amended), and the Code of 1887, sec. 2559 (now Code, sec. 5276, as amended). Under their present provisions these statutes give a corresponding right to the surviving husband as well as to the widow.

As the author says (page 530), "But, whilst the husband cannot defeat the wife's claim to her distributive share by will, he may do so by any irrevocable disposition of the property in his lifetime, although he secure a life estate to himself, and although his declared purpose is to disappoint the wife's claim as one of his distributees. (*Lightfoot* v. *Colgin*, 5 Munf. (19 Va.) 42; *Gentry* v. *Bailey*, 6 Gratt. (47 Va.) 594.)"

In *Hall* v. *Hall*, 109 Va. 117, 63 S. E. 420, 21 L. R. A. (N. S.) 533, we applied this principle in holding that a deed of trust executed by a husband was sufficient to defeat the widow's distributive share in his personalty. In that case the husband conveyed the bulk of his personal estate, comprising bonds and stocks, to trustees. The deed set out accurately the securities conveyed which were actually delivered to the trustees. The trustees were directed to collect the interest and dividends on these securities for the use and benefit of the grantor during his lifetime. They were clothed with wide discretion to invest and reinvest the corpus of the principal fund, and were directed at the grantor's death to distribute the corpus of the fund and accrued income, if any, to the grantor's relatives and connections, including his wife.

The widow renounced the will in which the husband had made relatively small provision for her, and elected to take her dower and distributive share in the estate. She brought a suit in equity to set aside the trust and to enforce her statutory rights. We held that since the deed of trust operated as a complete divestiture of the grantor's title to the personalty conveyed and irrevocably invested it in the trustees upon the trust and for the uses declared by the deed, it was an effective bar to the wife's distributive right in the personalty conveyed, although that was the purpose of the instrument.

Similarly, in *Lightfoot* v. *Colgin*, 5 Munf. (19 Va.) 42, and *Gentry* v. *Bailey*, 6 Gratt. (47 Va.) 594, the surviving wife's distributive rights in personalty were held to have been barred where the husband had actually transferred during his lifetime the personalty and divested himself of title thereto.

In the present case Wager did not deliver to the trustee the securities which now constitute the corpus of his personal estate, nor did he divest himself of title thereto and vest title in the trustee or in the beneficiaries. He transferred to the trustee a mere promise to pay to the trustee one year after his (Wager's) death a certain sum of money for the benefit of and to be distributed among certain designated beneficiaries.

Hence, we agree with the appellants that the trust was not enforceable as a gift.

But the appellees say that the bond and the trust constitute a valid and enforceable debt against Wager's estate. They argue that since both instruments are under seal they are not subject to attack upon the ground that there was no consideration for them, for, they say, the seal conclusively imports a consideration both at law and in equity. They strongly rely on *Watkins* v. *Robertson*, 105 Va. 269, 54 S. E. 33, 115 Am. St. Rep. 880, 5 L. R. A. (N. S.) 1194 In that case we upheld the vendee's right to specific performance of an option under seal to purchase certain shares of stock against the claim that it was not supported by

actual consideration. We there said (105 Va.; at pages 279, 280):

"In Virginia we have no statute abolishing or modifying the common law rule as to the effect to be given to the seal upon executory contracts.

" 'In a contract under seal, a valuable consideration *is presumed* from the *solemnity of the instrument*, as a matter of public policy and for the sake of peace, and presumed *conclusively*, no proof to the contrary being admitted either at law or in equity so far as the parties themselves are concerned.' 3 Min. Inst., Pt. 2 [1] 139.

"We have a number of decisions holding that parol evidence is admissible to show what was the real consideration for a conveyance made of property, where the conveyance was attacked for fraud; but they have no application here and do not impair the force of the statement which we have just quoted from Minor's Institutes to the effect that no proof is to be admitted, either at law or in equity,[1] to overcome the presumption from the solemnity of the contract under seal that the consideration named was actually paid as between the parties to the contract."

See also, *Turner* v. *Hall*, 128 Va. 247, 104 S. E. 861; *Mitchell* v. *Wayave*, 185 Va. 679, 40 S. E. (2d) 284.

■ It is also true that one may create a valid debt binding on him personally and on his estate although made payable after his death. See *Krell* v. *Codman*, 154 Mass. 454, 28 N. E. 578, 26 Am. St. Rep. 260, 14 L. R. A. 860; *Patterson* v. *Chapman*, 179 Cal. 203, 176 P. 37, 2 A. L. R. 1467.

In *Krell* v. *Codman, supra,* the testatrix executed a voluntary covenant under seal directing her executors within six months after her death to pay to the plaintiffs, upon certain trusts, the sum of 2,500 pounds, with interest. The highest court of Massachusetts held that this obligation was enforceable as a valid debt against the estate of the testatrix.

---

[1] In some jurisdictions the doctrine that a seal conclusively imports a consideration between the parties *in equity* does not obtain. See 4 Pomeroy Equity Jur., 5th Ed., section 1293, p. 841; 47 Am. Jur., section 13, p. 499; *Eclipse Oil Co.* v. *South Penn Oil Co.*, 47 W. Va. 84, 34 S. E. 923, 929.

It said: "In our opinion, such a covenant as the present is not contrary to the policy of our laws, and could be enforced here if made in this state. If it were a contract upon valuable consideration, there is no doubt it would be binding: *Parker* v. *Coburn*, 10 Allen (92 Mass.) 82. We presume that, in the absence of fraud, oppression, or unconscionableness, the courts would not inquire into the amount of such consideration: *Parish* v. *Stone*, 14 Pick. (31 Mass.) 198, 207, 25 Am. Dec. 378. This being so, consideration is as much a form as a seal." (26 Am. St. Rep., p. 261.)

■■ But the present suit is not one between the parties to the contract. It is a proceeding in equity in which the beneficiaries under the trust are seeking enforcement of its provisions and those of the bond therein incorporated, and the widow, a third party, is attacking the validity of the transaction on the ground that it operates as a fraud on her rights. It falls within that class of cases in which, as is indicated by the language quoted from *Watkins* v. *Robertson, supra,* a court of equity, notwithstanding the seal, will inquire into whether the instrument is supported by an actual consideration. It is elementary that a court of equity, which looks to the substance and not merely to the form of the transaction, may be resorted to in order to prevent a fraud.

■ During her husband's lifetime his wife has no interest whatever in his personal estate. He may transfer it, give it away, or squander it. But instantly upon his death the statutes give his widow an interest therein, a right which he can defeat only by divesting himself absolutely, during his life, of the ownership of and title to such property.

■ While there is a wealth of authority on the subject of what gifts, transfers or trusts are sufficient to bar the distributive right of a surviving spouse in the personal estate of his or her deceased consort,[2] we have been referred to no case, nor have we been able to find any, which

[2] See 26 Am. Jur., Husband and Wife, section 198 *ff.*, p. 816 *ff*; 41 C. J. S., Husband and Wife, section 20, p. 417 *ff*; Annotations: 64 A. L. R. 466, 112 A. L. R. 649, 157 A. L. R. 1184; 44 Mich. Law Review 151.

goes so far as to sustain the validity of a voluntary obligation unsupported by a valuable consideration, payable after the consort's death, and given with the intent to deprive the surviving spouse of his or her distributive right in the consort's personal estate.

It is conceded that the bond and trust obligation were given and received with intent to deprive the widow of her distributive share in her husband's personal estate. The determinative question then is, Was the obligation to Wager to the beneficiaries named in the trust founded upon an actual valuable consideration, or was it purely voluntary?

Since the beneficiaries were seeking enforcement of the bond and trust, the primary burden was on them to show the validity of the obligation. The production of the instruments, under seal, made out a *prima facie* case in their favor, and cast upon the widow and those claiming under her the duty of showing that the obligation to the beneficiaries under the instruments was voluntary and ineffective for lack of actual consideration. The trial court so held, and we agree with its reasoning thus far. But we do not agree with its conclusion that the widow and those claiming under her failed to carry the burden imposed on them. In our opinion the evidence adduced, in the light of the circumstances, clearly shows that the obligation to the beneficiaries under the bond and trust was voluntary and not supported by an actual consideration.

In the first place, we think it is apparent from the instruments themselves, construed in the light of the circumstances under which they were drawn, executed and delivered, that there was no actual consideration for Wager's declaration of trust and promise to pay the proceeds of the bond to the trustee for the benefit of the named persons. While the trust describes with particularity Wager's indebtedness to Barbour, which is to be discharged out of the proceeds of the bond, nothing is said of any such indebtedness or other legal obligation of Wager to the beneficiaries or any one of them. If such obligation had existed it is reasonable to suppose that it would have been referred

to in the instrument as the basis for the trust, as was done with respect to the debt due Barbour.

Moreover, the trust states, as one of its purposes, the intent to "make proper and irrevocable provision during my life for certain of my brothers and sisters and their children," which is indicative of a gift rather than a promise to pay for value received.

Again, on the same day on which the trust was executed and delivered, Wager made and executed his will in which he named these same persons as the objects of his beneficence. Not a word is said there as to his being indebted to any of them.

The appellees say that Wager's admitted indebtedness to Barbour supplied the necessary consideration. This position is not sound. While Wager's indebtedness to Barbour of course furnished the consideration for his promise to pay Barbour, it did not supply the necessary consideration for Wager's promise to pay the other beneficiaries. Clearly they were separate and independent obligations. It is conceded that the debt to Barbour was discharged during Wager's life.

Neither would the trustee's acceptance of the trust furnish the consideration for the supposed obligation to the beneficiaries.

But this is not all. The record shows that Mr. Barbour prepared all of these documents. He testified that he and Wager were "quite intimate." Called as an adverse witness by the appellants he was asked whether he knew of any consideration moving "from the beneficiaries, either or any of them," to Wager, and his reply was: "I know of no other consideration other than that expressed in the bond and in the declaration of trust."

It is inconceivable that in the preparation of these documents for the obvious purpose of circumventing the wife's rights, the husband would have failed to disclose to his counsel the existence of actual consideration for the promise, had there been any, or that eminent and astute counsel

would have failed to incorporate so vital a matter in the instruments.

E. O. Willis, an intimate friend of both Mr. and Mrs. Wager, who was called as a witness for the appellees with respect to other matters, was asked on cross-examination whether he knew of any consideration moving from the beneficiaries, or any of them, to Wager for the bond and trust agreement. His reply was: "I am very confident it was not. In my association with Mr. Wager he had repeatedly told me about helping his sister but received no help from them."

This testimony of Mr. Barbour and Mr. Willis comes from their depositions taken before the commissioner in chancery, and hence we are in as good a position as the trial court to evaluate its weight and sufficiency.

We are of opinion that this evidence, viewed in the light of the language of the instruments under consideration and of the other surrounding circumstances, was sufficient to overcome the *prima facie* presumption that, because of the seals attached, the obligation to the beneficiaries under the bond and trust was supported by an actual consideration. In this situation it was the duty of the appellees to have gone forward with the production of evidence which was peculiarly within their knowledge and to have shown the existence of actual consideration for the alleged obligation to them. Not having produced such evidence the beneficiaries, who are asking the court to enforce the obligation, have failed to carry the burden of proof which the law imposes upon them.

We have been cited to a great number of authorities dealing with matters akin to that under discussion. None is precisely in point. The determination of the matter rests upon principles which are fixed in this State.

We hold that the right given by our statutes to a widow to share in the surplus of her deceased husband's personal estate cannot be defeated by so simple a device as this, where he retains up until the time of his death full ownership and enjoyment of his personal property, and

merely executes and transfers to a trustee his bare promise under seal, unsupported by an actual consideration, to pay to the trustee after his (the husband's) death, for the benefit of designated beneficiaries, a sum of money equivalent to the corpus of his personal estate, or the major portion thereof. In substance, such a device is but a legacy in disguise. See *Ruth v. Owens*, 2 Rand. (23 Va.) 507, 510. It operates as a fraud upon and is void as to the rights of the widow, and in equity will be set aside at her instance.

Since it is admitted that the $1,000 debt due to Mr. Barbour, and described in the trust agreement, has long since been paid, the trust and the bond therein described should not be allowed as a valid claim against Wager's estate.

Error is assigned to the action of the lower court in refusing to remove Mr. Barbour as executor of the decedent's estate, because, it is said, his duties as personal representative were in conflict with his duties as trustee under the deed of trust. It is argued that as trustee it was his duty to enforce the trust and the collection of the bond as a debt due by the estate, while as executor it was his duty to resist the payment of the claim.

Assuming, but not deciding, that there was such conflict of interest as would have justified the removal of the executor by the lower court (see *Nickels v. Horsley*, 126 Va. 54, 100 S. E. 831), that objection has now been removed by this decision which requires the disallowance of the claim. In other words, the matter has become moot.

As a corollary to the claim that Mr. Barbour should have been removed as executor, it is urged that counsel for the widow and for her estate should be compensated out of Wager's estate for services in this suit.

There is no merit in this contention. As we pointed out in *McCormick v. Elsea*, 107 Va. 472, 475, 59 S. E. 411: "Except in rare instances, the power of a court to require one party to contribute to the fees of counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which enures to the common benefit of

all; but the discretion vested in the court should never be exercised in a case where the interests of the party whose fund is sought to be charged are antagonistic to the party for whose benefit the suit is prosecuted." See also, *Stuart v. Hoffman & Co.*, 108 Va. 307, 311, 61 S. E. 757; *White v. Thompson*, 186 Va. 567, 572, 42 S. E. (2d) 868, 870.

In the present case counsel for the widow neither discovered, created nor preserved any fund. They merely represented the widow, and later her estate, in resisting the allowance of a claim out of her husband's estate, which if paid would have resulted in a loss to her or her estate. For compensation for such services counsel must look to the interests which they represent.

The evidence shows that on or about December 20, 1935, Wager and his wife jointly purchased a residence in the town of Culpeper for the sum of $5,000. Of the purchase price $1,500 was paid in cash, and the balance of $3,500 was evidenced by the Wagers' joint note, secured by a first lien deed of trust on the property. Upon the maturity of this note, in January, 1939, Wager and his wife borrowed the sum of $4,000 upon their joint note, payable to bearer five years after date and bearing interest at the rate of five per cent. per annum. Out of the proceeds of this loan the first-mortgage note of $3,500 was paid, and, as the commissioner found, the balance of $500 "was retained and used by C. E. Wager for his personal benefit." Prior to its maturity the $4,000 note was paid in full by Wager who took an assignment thereof.

In the settlement of the cross-claims between the estates of Wager and his wife, both the commissioner and the court found that Mrs. Wager's estate should reimburse her husband's estate to the extent of $1,750, with interest, that being one-half of the principal of the first-mortgage note which was discharged out of the proceeds of the $4,000 loan.

Both sides assign error to this finding. Counsel for Mrs. Wager's estate say that upon the payment of the note by Wager, a joint maker, the debt thereby became extinguished

and Wager, as one of the joint makers, could not take an assignment thereof. Moreover, they say, when a husband pays a debt which is jointly due by his wife and himself, the law presumes that such payment which he makes for her benefit is intended as a gift.

It is true that payment by one jointly liable on a negotiable instrument enures to the benefit of his co-obligor and releases the latter from obligation on the instrument to the holder receiving payment. 10 C. J. S., Bills and Notes, sec. 448-d, p. 984. And while the joint maker who has made payment cannot sue his co-maker on the note, by reason of its assignment to him by the payee, he may nevertheless recover of the co-obligor in an action for contribution. 10 C. J. S., Bills and Notes, sec. 449-b, p. 986, sec. 37-f, p. 466; *Houston* v. *Bain,* 170 Va. 378, 196 S. E. 657.

The fact that Wager took an assignment of the note after having paid it shows that he did not intend to make a gift to his wife of the portion of the debt for which she was liable.

We agree with the commissioner and the trial court that the evidence shows that Wager retained and used for his personal benefit $500, derived from the proceeds of the $4,000 loan. This is a sufficient answer to the appellees' cross-assignment of error that the widow's estate should reimburse her husband's estate for one-half of the balance of $500.

The appellees assign cross-error to the action of the lower court in disallowing the claim of the husband's estate against the widow's estate for one-half of the total amount of $3,153.11 expended by the husband for improvements on their jointly-owned Culpeper residence. The appellees admit that as a general rule such moneys spent by the husband for the improvement of realty owned by the wife or owned jointly by him and his wife are presumed to be gifts or expenditures for her benefit. See *Eaton* v. *Davis,* 165 Va. 313, 319, 182 S. E. 229, 231. But they say that such presumption is rebuttable and in the present case has

been rebutted by the showing that this couple was estranged for years, as is shown by the husband's will and trust agreement executed in 1932, even before the Culpeper property was acquired.

This reasoning, we think, is answered by our holding in *Eaton* v. *Davis, supra,* in which we held that the fact that a couple was estranged, together with other facts and circumstances there relied on, was insufficient to overcome the presumption that such moneys were gifts or expenditures for her benefit. We there pointed out that, "The inference that such expenditures were made for the benefit of the wife arises from the fact that the husband is under both a moral and legal obligation to support and maintain the wife." (165 Va., at page 319.)

Moreover, while Wager was careful to preserve his claim against his wife for contribution for the amount which he expended in discharging their joint note, by taking an assignment of the instrument, which, as we have pointed out, negatived the presumption that any part of the payment was for her benefit, he took no similar step to preserve his claim against her for her share of the cost of the improvements.

We are of opinion that the trial court's ruling on this item was correct.

The final cross-assignment of error is to the action of the trial court in allowing the widow's estate reimbursement from her husband's estate for $718.66, that being the amount which Mrs. Wager spent out of her own funds during the period from January 21 to September 20, 1943, for hospitalization expenses, nursing fees, medical supplies and other necessaries. The appellees say that reimbursement to the widow's estate for these items should have been disallowed under the principle that where a wife, living with her husband, voluntarily uses the funds of her separate estate for the purchase of necessaries for herself, the members of the family and the household, such payments are presumed to be gifts by her to the husband and cannot be recovered by her from him or his estate in the absence of an agreement

for reimbursement. 26 Am. Jur., Husband and Wife, sec. 342, p. 941; *Spalding* v. *Spalding*, 361 Ill. 387, 198 N. E. 136, 631, 101 A. L. R. 433. Compare Schouler on Marriage, Divorce, Separation and Domestic Relations, 6th Ed., Vol. I, sec. 86, p. 109; 41 C. J. S., Husband and Wife, sec. 50-d, p. 514; *DeBrauwere* v. *DeBrauwere*, 203 N. Y. 460, 96 N. E. 722, 38 L. R. A. (N. S.) 508.

But the present case does not come within the principle invoked by the appellees. We agree with the trial court that the evidence shows that Mrs. Wager did not voluntarily spend her personal funds for these necessaries, but was compelled to do so by her husband's refusal and neglect to provide them for her.

The record shows that during the period in which these expenditures were made, Mrs. Wager was seriously ill, constantly under the care of physicians and nurses, and, for a part of the time, in a hospital. At times she was unable either physically or mentally to attend to her business affairs. She sought and obtained the assistance of a relative, E. O. Willis, an officer in a local bank, to whom she gave a power of attorney authorizing him to sign checks on her bank account. Some of the items in dispute were paid in this manner.

Willis undertook to get Wager to pay for these necessaries, but he refused to do so unless and until Mrs. Wager had exhausted her personal funds. While it may be that Willis did not discuss with Wager the latter's duty to pay all of the items, Wager knew of his wife's need for these necessaries and yet failed to provide them for her.

Common sense tells us that in this situation there is no presumption that the wife intended to make her husband a gift of these payments. Clearly, then, we think the lower court's allowance of this claim to the wife's estate was proper.

That portion of the decree appealed from which holds that John S. Barbour, as trustee under the bond and declaration of trust, is entitled to recover of and from John S. Barbour, as executor of the estate of C. E. Wager, deceased, the sum of $20,000, with interest thereon, is reversed. In

all other respects the decree is affirmed. The cause is remanded to the lower court for such further proceedings as may be necessary, in conformity with the views here expressed. The appellants having substantially prevailed on this appeal will recover their costs.

*Reversed in part; affirmed in part;*
*and remanded.*