## CIRCUIT COURT OF FAIRFAX COUNTY

Ozzie Clay et al.

v.

First Union National Bank
of Florida et al.

Case No. (Chancery) 136280

By Judge Dennis J. Smith

July 26, 1995

The matter is before the Court on defendants' Demurrers and Pleas in Bar to plaintiffs' Ozzie Clay and Clay Properties, Inc., Bill of Complaint. Following oral argument on the motions on July 6, 1995, the Court took the matter under advisement.

The Bill of Complaint makes the following allegations.

On May 8, 1979, plaintiff Ozzie Clay executed a promissory note in favor of Northern Virginia Savings and Loan Association ("NVSL") in the amount of $160,000.00. The note was secured by a deed of trust on real property located in McLean, Virginia ("the Property"). The deed of trust and note were modified on the same date by a Modification of Note and Deed of Trust Agreement. Sometime after 1979 the Note was acquired by Meritor Savings, F.A. (Meritor is now known as First Union National Bank of Florida) from NVSL; Meritor then transferred the Note to First Union National Bank of Virginia. The original trustees under the Deed of Trust were Martin Schneider and John Smoot. Meritor thereafter appointed defendants Joseph Buonassissi and John Moffet as substitute trustees to the Deed of Trust.

On December 14, 1991, the Property was severely damaged by fire. On January 7, 1992, Meritor made a claim on a fire and casualty insurance

policy that it had contracted with Transamerica Insurance Company of California for property insurance in the event the primary insurance failed to pay for any reason. The primary insurer refused to pay for the fire damage on June 10, 1992. As a result of alleged disagreements between Ozzie Clay and Meritor "regarding insurance," Ozzie Clay stopped paying on the Note in late 1991.

On June 1, 1992, Meritor, acting through its trustee and agent Buonassissi declared the Note in default and threatened foreclosure of the Property unless payment in full was made. When payment was not made, Buonassissi began foreclosure proceedings. On June 11, 1992, Buonassissi notified Ozzie Clay that the Property would be sold at public auction on June 25, 1992. An advertisement of the foreclosure sale was published four times in the *Fairfax Journal* beginning on June 2, 1992. Ozzie Clay alleges that on June 16, 1992, and at various times thereafter, he demanded to know what he owed and what he had failed to pay so that he could redeem his property, but Meritor refused to provide this information.

Meritor foreclosed on the deed of trust and purchased the Property at the public auction on June 25, 1992. On October 19, 1993, Transamerica issued a check payable to Meritor in the amount of $153,000.00 for the fire damage to the Property. Meritor thereafter deposited the check in its own account. No part of the insurance proceeds were ever paid to Ozzie Clay. On December 15, 1993, Meritor sold the Property to defendants William and Ann Valentine for $227,000.00. On January 3, 1994, Ozzie Clay visited the Property and discovered that his personal belongings had been removed from the Property.

Plaintiffs' Bill of Complaint contains the following six counts: Count I: Breach of Contract; Count II: Breach of Fiduciary Duty; Count III: Redemption; Count IV: Accounting; Count V: Conversion; and Count VI: Trover. All defendants have filed demurrers and pleas in bar to all six counts of the Bill of Complaint.

## Multifariousness

In addition to demurring to each individual count, defendants demur in general to the Bill of Complaint on the grounds that the Bill is multifarious in that it improperly joins claims and parties. The demurrer as to multifariousness for improper joinder of claims is denied as the claims all arise out of the same transaction. The plaintiff is entitled to plead alternative remedies in the same case. Va. Code § 8.01-281 and Rule 1:4(k) of the Rules of the Supreme Court of Virginia.

The demurrer as to multifariousness for improper joinder of plaintiffs is sustained as no allegations have been made which would sustain the granting of any relief to Clay Properties, Inc., therefore there is nothing in the Bill of Complaint to indicate that the claim of Clay Properties, Inc., arises from the same transaction. The action brought by Clay Properties, Inc., against all defendants shall therefore be dismissed without prejudice. Note also that defendant First Union of Virginia shall be dismissed as a party defendant by agreement.

## Breach of Contract

Count I(a) alleges that the defendants failed to comply with Paragraph 5 of the Deed of Trust. Paragraph 5 states, in part, that:

> Insurance proceeds shall be applied to restoration or repair of the property damaged, provided such restoration or repair is economically feasible and the security of this deed of trust is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this deed of trust would be impaired, the insurance proceeds shall be applied to the sum secured by this deed of trust, with the excess, if any, paid to Borrower.

Ozzie Clay contends that based on this paragraph, he was entitled to the insurance proceeds received by Meritor on the Transamerica policy. Paragraph 5 further provides, however, that:

> If under Paragraph 18 hereof, the Property is acquired by the Lender, all right, title, and interest of the Borrower in and to any insurance proceeds and in and to the proceeds thereof resulting from damage to the property prior to the sale or acquisition shall pass to the Lender to the extent of the sums secured by this deed of trust immediately prior to such sale or acquisition.

Defendants contend that the amount due Meritor exceeded the insurance proceeds; therefore, any right Ozzie Clay may have had in the policy passed to Meritor and/or its successors-in-interest. Ozzie Clay alleges in paragraph 42 of the Bill of Complaint, however, that at the time Meritor deposited the Transamerica check into its account, Meritor was not owed anything by Ozzie Clay. As the allegations of the Bill of Complaint must be taken as true in ruling on the demurrer, Meritor's demurrer must be overruled. With regard to the Trustees, there is no allegation in the Bill of Complaint that the Trustees ever received insurance proceeds; accordingly,

the demurrer of the Trustees to this Count is sustained with leave to amend within twenty-one days.

Count I(b) alleges a failure to comply with Paragraph 18 of the deed of trust, while Count I(c) contends that defendants failed to comply with Paragraph 19. Paragraph 18 delineates the rights and remedies of the parties in the event of a default by the Borrower. Paragraph 19 describes the Borrower's right to reinstate. The demurrers are based upon the content of the Modification of the Deed of Trust, which was executed on the same day as the original Deed of Trust. The Modification substantially changed Paragraph 18 by drastically reducing the Lender's obligations with regard to acceleration and foreclosure, while Paragraph 19 was essentially deleted. Defendants contend that the parties' rights are governed by the Modification of Deed of Trust, while plaintiff Ozzie Clay maintains in Paragraph 11 of the Bill of Complaint that the original Deed of Trust is in effect because the modification was not supported by consideration and is therefore invalid. The defendants correctly state that as a document under seal, consideration for the modification is presumed. This presumption is, however, rebuttable, and Ozzie Clay's allegation that there was no consideration is sufficient to survive a demurrer, although the burden of proving an absence of consideration will be on the plaintiff at trial. *See Norris v. Barbour*, 188 Va. 723 (1949). The demurrers of the lenders and trustees as to Counts I(b) and I(c) must therefore be overruled.

Count I(d) asserts a failure to comply with Paragraph 20 regarding collection and application of rents by the Trustees or lender in possession of the property. The Plaintiff admitted in oral argument that there were no allegations to support this contention and also conceded that the express language of the paragraph made the obligations of the lender or trustees in possession optional and not mandatory. Accordingly, the demurrers as to Count I(d) are sustained with prejudice.

In Count I(e), Ozzie Clay contends that the sale of the Property at auction did not comply with all the legal requirements for such sale. The plaintiff asserts the existence of a written contract in the form of the first deed of trust which establishes the parties rights and obligations with regard to legal requirements for sale. As the law will not imply a contract in contravention of an express contract (see *Nedrich v. Jones*, 245 Va. 465 (1993)), this Count is barred by law and duplicative of Counts 1(b) and (c). In either event, the demurrers are sustained, with leave to amend within twenty-one days.

Count I(f) alleges a breach of contract for the refusal to return Ozzie Clay's personal property. As there are insufficient allegations to establish any contractual relationship between the parties with regard to the personal property, the demurrers of the lenders and the trustees to the contract Count 1(f) are sustained, with leave to amend within twenty-one days.

Ozzie Clay also requests as relief in Count I that the sale to the Valentines be set aside as an alternative to money damages. The prayer for setting aside the sale to the Valentines is duplicative of the remedy sought in Count III and is improperly included in the breach of contract count. The demurrer is therefore sustained, without leave to amend.

As a final matter with regard to the demurrers to Count I, the Valentines are not alleged to be parties to a contract with Ozzie Clay, nor are they necessary parties to this Count. They are accordingly dismissed as defendants in Count I.

The pleas of the statute of limitations as to Count I is withdrawn by the defendants as all such claims are based upon contract and are governed either by the three-year or five-year limitation, neither of which have been exceeded.

## Breach of Fiduciary Duty

Count II seeks to recover damages for an alleged breach of fiduciary duty by the Trustees. Counts II(a) and (b) request damages for breaches of fiduciary duties related to the accounting, and Counts II(c) and (d) do not even mention the accounting. I find that the claim for alleged breaches of fiduciary duty stated herein, which requests money damages, is not a suit brought on the bond of a fiduciary, a suit to surcharge or falsify the account, or a suit to hold the fiduciary or his sureties liable for any balance stated in such account, all of which would be subject to the ten-year limitation of §§ 8.01-245(a) and (b), but rather it is a personal action which must be brought within one year under § 8.01-248. *See also, Singer v. Dungan*, 45 F.3d 823 (4th Cir. 1995), and *FDIC v. Cocke*, 7 F.3d 396 (4th Cir. 1993). Additionally, the argument of the plaintiff that the statute has not yet begun to run is rejected. Even assuming, *arguendo*, that the statute would not run until the end of the fiduciary relationship is communicated to the plaintiff, the filing of the final accounting would serve as such notice. The plaintiff conceded that such an accounting was filed on October 23, 1992. The one-year statute of limitations ran from that date and expired prior to the filing of this action. Having disposed of the claim on this basis, it is unnecessary to reach the demurrers.

48

## Redemption

Count III seeks to set aside the foreclosure sale on three different grounds: (a) the Trustees did not foreclose in accordance with law; (b) Meritor refused to give Ozzie Clay an opportunity to reinstate the trust; and (c) Meritor refused to give Ozzie Clay the opportunity to redeem the note. The failure to advertise in accordance with applicable law or provisions of the Deed of Trust has been held to render the sale void. *See Deep v. Rose*, 234 Va. 631 (1988), and *Turk v. Clark*, 193 Va. 744 (1952). The issue of whether the advertisement was required by the original Deed of Trust or by the Modification is subject to a determination of plaintiff's claim regarding absence of consideration. Accordingly, the issue of whether the sale was properly advertised is a matter of proof to be adduced at trial. The demurrers to Count III(a) must therefore be overruled as to the Trustees and Meritor. *See CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 24 (1993).

The issue of whether Ozzie Clay retained the right to reinstate is likewise dependent upon resolution of whether the original Deed of Trust remains in effect as that right is contained in Paragraph 19 of the original Deed of Trust. The demurrers of the Trustees and Meritor to Count III(b) are thus overruled.

As to Count III(c), the right of equity of redemption is well settled in Virginia. *See generally Snavely v. Pickle*, 70 Va. (29 Gratt.) 27 (1877), and *Rolen v. Southwest Virginia National Bank*, 39 Bankr. 260 (W.D. Va. 1983). Ozzie Clay's contention that Meritor refused to give him the opportunity to redeem the Note is sufficient to withstand challenge on demurrer. Accordingly, the Demurrers of the Trustees and Meritor to this count are overruled.

With regard to the Valentines, *bona fide* purchasers are protected when they do not have notice, actual or constructive, of the obligations of the Trustee and compliance by the Trustee with those obligations. *See generally, Smith v. Woodard*, 122 Va. 356 (1918). The grounds for relief set forth in Counts III(b) and (c) come within the type of grounds for relief which might allow recovery against the Trustee or the lender, but not against a *bona fide* purchaser. As the allegations against the Valentines are insufficient to find them to be other than *bona fide* purchasers, Counts III(b) and (c) are dismissed as to the Valentines, but the Valentines are retained as necessary parties to Count III(a) of this suit.

As Counts III(a) and (b) are all based upon alleged written contractual rights, the pleas in bar to the statute of limitations are denied. The action

was timely filed within the five-year limitation period. Count III(c), redemption, is an equitable right (*see* 13A Michie's Jurisprudence, *Mortgages and Deeds of Trust*, §§ 177 *et seq.* and the cases cited therein) and is therefore not subject to the one-year personal action statute of limitations under Va. Code § 8.01-248. There is insufficient evidence in the record at this time to find the plaintiff barred by the doctrine of laches; therefore, the plea in bar based upon the Statute of Limitations is overruled, and the plea based upon laches is denied, without prejudice to renew.

## Accounting

As to Count IV requesting an accounting for all sums and property received by them as a result of the foreclosure, Va. Code § 26-17 requires an accounting to contain a statement of all money and other property received by the trustee. Ozzie Clay does not directly allege that the Trustees' account is defective, but it is sufficient that he has alleged that the Trustees have failed to account for personal property left by him at the Property. The demurrer of the Trustees is therefore overruled. The Trustees' plea to the statute of limitations is denied as the challenge to the accounting was made within the applicable ten-year period set forth at Va. Code § 8.01-245(B).

As to the lenders, the plaintiff has alleged that Meritor received a check made payable to "Meritor Savings for the account of Ozzie Clay," which Meritor negotiated. Paragraph 5 of the Deed of Trust sets out the proper application by the lender of insurance proceeds and also provides that in the event the lender acquires the property under Paragraph 18 of the Deed of Trust, then Ozzie Clay's rights in the insurance proceeds "shall pass to the Lender to the extent of the sums secured" at the time of the acquisition. Ozzie Clay has therefore alleged a contractual relationship which would entitle him to an accounting for the proceeds upon request. The demurrer is overruled, and the plea to the statute of limitations is denied as the rights are contractual in nature.

As there are no allegations in Count IV concerning the Valentines, they are to be dismissed as parties to this Count.

## Conversion and Trover

I find that Ozzie Clay has sufficiently pleaded Count V (Conversion) and Count VI (Trover) against both the Trustees and the lenders. With regard to the Valentines, however, there is no allegation in the Bill of

Complaint sufficient to state a cause of action for either Conversion or Trover against the Valentines, and their demurrer must therefore be sustained without prejudice.

Both claims were brought within the applicable five-year limitations period, (Va. Code § 8.01-243(B)), therefore the pleas in bar as to Count V and VI are denied.

Finally, Ozzie Clay seeks recovery of punitive damages in connection with his claim for conversion. Defendants' demurrer to the damages claim is sustained as the allegations do not rise to the level of an independent and willful tort as required by Virginia law. *See, e.g., Kamlar Corp. v. Haley*, 224 Va. 669 (1983), and *Gasque v. Mooers Motor Car Co.*, 227 Va. 154 (1984). Punitive damages are not generally recoverable for breach of contract in the absence of an independent willful tort, and more than a mere breach of a duty imposed by contract is required to sustain an award of punitive damages.

## April 26, 1996

The case before the Court involves Complainant, Ozzie Clay's, breach of contract claim for damages and his equitable claim to set aside a foreclosure sale. After a full trial on March 11, 1996, in which the parties presented evidence and arguments regarding the merits of the case, the Court requested that counsel submit written closing arguments. On March 29, 1996, the Court heard oral argument on these briefs, after which the Court took the matter under advisement to further consider its decision.

The case arises out of a promissory note executed by Complainant, Ozzie Clay, in favor of Northern Virginia Savings and Loan Association in the amount of $160,000.00. The note was secured by a Deed of Trust on real property located in McLean, Virginia. A Modification of Note and Deed of Trust Agreement was executed by the parties and is dated May 8, 1979. Some time after this date, Meritor Savings, F.A. (now known as First Union National Bank of Florida) acquired the Note from NVSL and later transferred it to First Union National Bank of Virginia. Joseph Buonassissi and John Moffett were subsequently appointed as substitute trustees to the Deed of Trust.

On August 18, 1989, Meritor and Clay entered into a Forebearance Agreement. In 1990, after Complainant breached the terms of this agreement, the Property proceeded to foreclosure. However, these foreclosure proceedings were eventually stayed when Mr. Clay filed for bankruptcy. A subsequent 1990 Consent Order Granting Relief from Stay was entered

with the Bankruptcy court that authorized foreclosure on the Property contingent upon Defendants' filing a Certificate of Non-Payment with the Bankruptcy Court. A Certificate was eventually filed on December 31, 1991, and the property once again proceeded to foreclosure.

At some point prior to December 14, 1991, Meritor contracted with Transamerica Insurance Company of California to provide a fire and casualty insurance policy on the Property in the event that the primary insurer, Vigilant, failed to pay for any reason. On December 14, 1991, the Property was severely damaged by fire. Vigilant refused to pay out any proceeds, and Meritor filed a claim on the Transamerica policy.

As a result of alleged disagreements between Clay and Meritor regarding insurance, Ozzie Clay stopped making payments on the Note. On June 1, 1992, Trustees Buonassissi and Moffet declared the Note in default. After the Note remained unpaid, on June 25, 1992, the Trustees held a public auction foreclosure sale at which Meritor purchased the property for the amount claimed to be due and owing under the Note and Deed of Trust.

On October 19, 1993, Transamerica issued a check payable to Meritor in the amount of $153,000.00 for the fire damage to the property, all of which was deposited in Meritor's account. No part of the insurance proceeds was ever paid to Complainant. Finally, on December 15, 1993, Meritor sold the Property to Defendants William and Ann Valentine for $227,000.00.

## I. *Breach of Contract*

Complainant contends that Defendants breached the Trust agreement by not affording him a right of reinstatement. Complainant alleges, *inter alia*, that Defendants did not adequately notify him of his right to reinstatement in accordance with paragraph 8 of the original Deed of Trust, nor did they provide him with specific payment information. Although Complainant concedes that a subsequent Modification of Note and Deed of Trust Agreement was executed by the parties and that this agreement apparently deletes his right of reinstatement, he argues that the Modification of Note and Deed of Trust Agreement is not valid because it is not supported by adequate additional consideration.

The Court finds that the Modification of Note and Deed of Trust is valid. As it is under seal, Virginia law presumes that it is supported by consideration. *Norris v. Barbour*, 188 Va. 723, 51 S.E.2d 334 (1949). Clay bears the burden of rebutting this presumption. *Id.* The only rebuttal evi-

dence presented at trial was testimony by Complainant himself and his business associate, Mr. Mockabee, that the Modification was not signed on May 8, 1979 (as is indicated on the document itself) but rather was executed some time in June. However, even if that testimony is accepted, the Court finds that execution of both the original Deed of Trust and the Modification were part of the same transaction, as is indicated in part by the fact that they were simultaneously recorded on August 26, 1979, as one document. *See Major v. Price*, 196 Va. 526, 84 S.E.2d 445 (1954). Accordingly, the Modification of Note and Deed of Trust Agreement is supported by the consideration for the original document and is a valid and enforceable agreement, which deleted Complainant's rights with regard to reinstatement.

The Court further finds that even if the Modification was not supported by adequate consideration, that fact is irrelevant as Defendants did not refuse to provide Complainant with payoff information and thereby deny Complainant his substantive reinstatement rights pursuant to paragraph 19 of the Original Deed of Trust.

As to Complainant's alleged right to notice of reinstatement, these rights would arise under paragraph 18 of the Original Deed of Trust which provides, *inter alia*:

> Except as provided in paragraph 17 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than thirty days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

Paragraph 18 was deleted by the Modification of Note and Deed of Trust. Virginia Code §§ 55-59 and 55-60, which are the governing provisions

under the Modification of Note and Deed of Trust, do not provide for rights of reinstatement or notice of rights of reinstatement.

Furthermore, under the provisions of paragraph 18 of the Original Deed of Trust, the notice of reinstatement right was to be given as part of the notice of intention to foreclose. Notice with regard to foreclosure is governed by the terms of the Forebearance Agreement entered into by Meritor and Complainant on August 18, 1989. Paragraph 9 of that agreement specifically states:

> 9. Borrower understands that, if Borrower defaults hereunder, Meritor will not send any further notices of intention to foreclose . . . .

The Court finds that Complainant waived any right he may have possessed to reinstatement notice pursuant to paragraph 18 of the Original Deed.

## II. *Propriety of Foreclosure*

Complainant claims that in the event of default in Note payments, paragraph 8 of the 1989 Forebearance Agreement entered into between Complainant and Meritor mandates a Sheriff's Sale. Therefore, Complainant argues that the foreclosure sale at which Meritor purchased the Property was invalid and requests the Court to set it aside.

Although the Court agrees with Complainant that the 1989 Forebearance Agreement is the controlling document, it disagrees with Complainant's interpretation of it. Paragraph 8 of that Agreement provides that in the event of default on the Note and Mortgage, Meritor "shall have the immediate right to . . . list the Premises for a Sheriff's Sale . . . ." However, paragraphs 7 and 9 of that same Agreement provide:

> 7. In addition to the payment terms set forth above, Borrower agrees to comply with all other provisions of the Note and Mortgage as modified hereby and agrees that the Note and Mortgage, as modified hereby, shall remain in full force and effect until full payment of the indebtedness evidenced and secured thereby; [and]
>
> 9. Borrower understands that, if Borrower defaults hereunder, Meritor will not send any further notices of intention to foreclose . . . .

As paragraph 8 of the Forebearance Agreement does not specifically mention Meritor's right to foreclosure and as paragraphs 7 and 9 of that

Agreement indicate that the parties intended for Meritor to retain its original right to foreclose on the Property, this Court finds that the Forebearance Agreement did not eliminate Meritor's right to proceed by way of a foreclosure sale in the event of default. Rather, the Court holds that this 1989 Agreement provides Meritor an *additional*, not a substitute right as to the manner of sale.

Next, Complainant argues that even pursuant to the modified Deed of Trust, Defendants were not permitted to foreclose on the Property as the Modification of the Note and Deed of Trust deleted those paragraphs pertaining to Defendants' right to foreclose. Pursuant to the Modification of Note and Deed of Trust, paragraphs 18 and 19 of the original Deed of Trust, which dealt with Defendants' rights upon default, were replaced by Va. Code §§ 55-59 and 55-60. However, contrary to Complainant's assertions, Va. Code § 55-59(7) specifically provides a lender with all rights regarding acceleration and foreclosure upon default. Complainant's argument is, therefore, not well taken.

Accordingly, the Court finds that foreclosure on the Property was proper and declines to grant Complainant's request to set aside the sale.

### III. *Insurance Proceeds*

Complainant contends that pursuant to paragraph 5 of the original Deed of Trust, he is entitled to the $153,000.00 in insurance proceeds which Transamerica paid to Meritor and which Meritor deposited in its own account. The Court disagrees.

Paragraph 5 of the Deed of Trust provides in pertinent part:

> Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, provided such restoration or repair is economically feasible and the security of this Deed of Trust is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Deed of Trust would be impaired, the insurance proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.

Furthermore, paragraph 5 of the Deed of Trust also provides:

> If under paragraph 18 hereof the Property is acquired by Lender [through foreclosure], all right, title, and interest of Borrower in and to any insurance policies and in and to the proceeds thereof

resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust *immediately prior to such sale or acquisition.* [Emphasis added.]

As the Court has ruled that Meritor's acquisition of the Property was validly accomplished, this provision of paragraph 5 entitles Meritor to insurance proceeds to the extent of the sums secured immediately prior to its acquisition, which ignores any sums received from its subsequent sale of the property. Therefore, the Court finds that Meritor is entitled to the entire $153,000.00 paid by Transamerica and is not liable to Complainant for any portion of this sum.

In light of these legal principles and findings, and in light of the evidence presented, this Court finds that Defendants are not liable to Complainant for breach of contract. Furthermore, the Court denies Complainant's request to set aside the foreclosure sale, reinstate the Deed of Trust lien, and re-transfer title to the Property back to Ozzie Clay. Ozzie Clay's Complaint against all Defendants involved in this suit shall be dismissed with prejudice.